[Criminal No. 703.   Filed December 30, 1929.]

[283 Pac. 711.]

# REFUGIO MACIAS, Appellant, v. STATE, Respondent.

Mr. T. E. Allyn, Mr. D. A. Fraser and Mr. Isaac Barth, for Appellant.

Mr. K. Berry Peterson, Attorney General, Mr. Riney B. Salmon, Assistant Attorney General, and Mr. H. Earl Rogge, County Attorney, for Respondent.

LOCKWOOD, C. J.—Refugio Macias, hereinafter called defendant, was informed against by the county attorney of Greenlee county for the crime of murder. The jury which tried the case found him guilty of murder in the first degree, and fixed the penalty at death. Judgment was duly pronounced in accordance with the verdict, and from this judgment defendant prosecutes his appeal to this court.

Counsel who represented defendant in the trial court filed a brief on appeal which contains some thirteen assignments of error. The Attorney General answered these assignments, and defendant's counsel replied thereto, and the case was ready for argument. At the last moment a request was made

that other counsel be associated in the defense, and that he be permitted to file a supplemental brief. This brief was filed four days only before oral argument, and, instead of being supplemental, it was in effect a new opening brief containing ten assignments of error, only two of which appeared in the original opening brief. Since, however, this is a capital case, we permitted it to stand, and allowed the state twenty days in which to answer the new issues raised therein.

We shall consider the assignments of error in their logical rather than their numerical order, characterizing the assignments of the first brief by their numbers and the letter A, and the assignments of the supplemental brief by their numbers and the letter B. These assignments may be divided into three classes: Objections to the instructions, objections to the rulings of the trial court on the admission and rejection of evidence, and general objections not included in the other two classes. We shall consider the general objections first.

Assignment 1–A is that the court erred in denying defendant's motion to dismiss the information. This is based on the theory that no proper order holding defendant to answer was made in accordance with section 885, Penal Code of 1913. It appears counsel for defendant is in error regarding the facts on this point, as the record on file in this court shows a proper order made strictly in accordance with the statute.

Assignment 5–A is that the court erred in refusing defendant's request that the rule be enforced against all witnesses. This is a matter of discretion for the trial court, and a case will not be reversed on this ground unless the discretion was abused. *Territory* v. *Dooley* 3 Ariz. 60, 78 Pac. 138; 16 C. J. 841. No abuse of discretion appearing affirmatively from the record, the assignment is not well taken.

Assignment 13–A is that the court erred in denying the motion to set aside the verdict and for a new trial. The grounds set up in the motion are in most cases general ones using the language of the statute, and are not argued seriously by defendant's counsel, except in so far as they are presented under the other assignments.

Assignment 9–B is that the verdict of the jury was contrary to law. The only argument presented on this belongs more properly under assignment 10–B, that the verdict is contrary to the evidence, and we consider the two assignments together. It is argued that the evidence in the case, taken at its strongest against appellant, does not justify a verdict of more than murder in the second degree. These assignments require a consideration of the evidence. Taken in its most favorable interpretation in behalf of the state, as we must do under such assignments, it would justify the jury in believing the following to be the facts in the case. Defendant had for some four or five years been a resident of Morenci, Arizona. For a considerable part of this period he was enamoured with Paula Medina, the niece of Pedro Ornelas, the deceased. She did not reciprocate his affection, and he had endeavored repeatedly to force his attentions upon her. Early in the evening, prior to the killing of Ornelas, he accosted her on the street, and was at that time told by her to refrain from further molesting her. Shortly after this episode he went to the residence of Cipriano Delgada, her brother-in-law, where she was living, and her sister asked defendant why he was bothering Paula, telling him to leave her alone. Some time after this interview, he met Delgada in company with one Antonio Lerma, who was at that time Paula's recognized sweetheart. Upon seeing them, defendant applied abusive epithets to Lerma, and immediately opened fire upon both Lerma and

Delgada with a revolver, wounding the former and sending a bullet through the coat of the latter. About 8 o'clock that evening, defendant again came to the Delgada house, and tried several times to break in through the door; but, not being successful, left. Near 1 o'clock in the morning, he returned, pushed on the doors, and tried to open the windows. Mrs. Delgada and her sister screamed, and their uncles, Pedro Ornelas, the deceased, and Julian De Luna, who were sleeping in a room in the lower part of the house, ran out of their room and up on the porch where defendant was standing. There was some conversation between the three, and then defendant fired at least three shots. One of these shots killed Ornelas almost instantly, he falling on the porch. Another mortally wounded De Luna, although he was able to return to his room before he died. Defendant then left the scene of the tragedy and was shortly after apprehended walking along near the road toward Clifton. Previously in the evening, after his first attempt to break into the Delgada house, and before his return at 1 o'clock in the morning, he left a packed suitcase with a friend, with the statement that, if after a while he did not come for it, he would send for it. These are the facts established by the evidence for the state.

Defendant's testimony, in substance, was that he had been drinking and was excited that night, so that he was not sure exactly what he had done, nor could he explain why he returned to the Delgada house at 1 o'clock in the morning. He did, however, state that, when he was on the porch of the house, Ornelas and De Luna attempted to assault him with knives, that he fired one shot into the floor, so they would not come close to him, and that when they continued their attack, forcing him back upon the corner of the porch so he could not well escape, he fired two other shots to defend himself, these two

being the ones which took the lives of Ornelas and De Luna.

It is the theory of the state that defendant was so madly enamoured with Paula Medina that he made up his mind to remove any and all persons who, as he believed, stood between him and the object of his affections; and that the foregoing evidence shows a deliberate intention on his part, persisting throughout the day, to accomplish such designs; and that, believing deceased was about to interfere with him in his amorous desires, he killed him. We are of the opinion the evidence would justify a reasonable juror in believing the state's theory of the case was the correct one. Does such a theory support a verdict of murder in the first degree?

That the killing of Ornelas was unlawful unless committed in self-defense cannot be denied, and the jury by its verdict resolved this issue against defendant. In order, however, that a killing shall be murder in the first degree, there must be added to the unlawfulness, malice, deliberation and premeditation.

Malice may be either express or implied.

" . . . It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied where no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." Section 171, Pen. Code, 1913.

The evidence above set forth is amply sufficient, in our opinion, to sustain a finding of implied malice, at least. Do deliberation and premeditation also appear? In order that a killing shall be murder in the first degree, while it must be shown that a plan to murder was formed after the matter had been made a subject of deliberation and reflection, yet, in view of the quickness with which the mind may act, the law cannot set any limit to the time. There need be no appreciable space of time between the intention

to kill and the act of killing. They may be as instantaneous as successive thoughts of the mind. It is only necessary that the act of killing be preceded by a concurrence of will, deliberation, and premeditation on the part of the slayer, and, if such is the case, the killing is murder in the first degree, no matter how rapidly these thoughts of the mind may succeed each other or how quickly they may be followed by the act of killing. *Faltin* v. *State,* 17 Ariz. 278, 151 Pac. 952; 29 C. J. 1114, 1115, and cases cited.

In the case at bar, the jury could properly have found from the evidence that a premeditated design on the part of defendant to kill anyone who interfered with his attentions to Paula Medina had existed for some time, and that, upon the appearance of Ornelas and De Luna on the scene, this intent and design became fixed upon them, and the act of killing followed immediately. If such was the case, all of the elements of first-degree murder appeared. It is true that, if defendant's testimony is to be accepted in its entirety, the situation is otherwise, but it is the rule in this state that, when any substantial evidence appears in the record upon which the verdict of the jury may be sustained, we will not set aside the verdict, because there is a conflict in the testimony. *Encinas* v. *State,* 26 Ariz. 24, 221 Pac. 232; *La Grange* v. *State,* 26 Ariz. 102, 222 Pac. 414; *Waddle* v. *State,* 27 Ariz. 68, 229 Pac. 944. Assignments 9–B and 10–B are not well taken.

This disposes of the general assignments of error. We consider next those affecting the admission and rejection of evidence. Assignment 2–A goes to certain statements made by the county attorney as a preliminary to the offer of evidence of previous difficulties between defendant and Paula Medina and her family. The court cautioned the jury that the statement of the county attorney was not to be taken as evidence, and the testimony of Paula Medina on the

particular matter, to which objection was made, was ordered stricken. In view of the admonitions and rulings of the court, we are of the opinion no error was committed.

Assignment of error 3–A is the same as 5–B, and we consider the two together. It is urged that the evidence of the altercation between defendant and Delgada and Lerma, wherein defendant fired several shots at the two latter, was improperly admitted as being evidence of a separate and distinct crime that in no way had any connection with the offense for which defendant was tried. It is, of course, true that generally in a prosecution for a particular crime evidence of another crime wholly independent of that for which the defendant is on trial is inadmissible. However, there are certain well-established exceptions to the general rule. When evidence tends directly to prove defendant's guilt of the crime charged, it is not inadmissible, because incidentally it proves him guilty of another and distinct offense. For example, when proof of the intent or motive with which the defendant acted tends to establish the necessary ingredients of the crime with which he is charged, evidence of another offense showing such intent or motive, and which fairly throws light upon the crime charged, is admissible. *Carter* v. *State,* 18 Ariz. 369, 373, 161 Pac. 878; *Dorsey* v. *State,* 25 Ariz. 139, 143, 213 Pac. 1011; *Lawrence* v. *State,* 29 Ariz. 247, 258, 240 Pac. 863; *Crowell* v. *State,* 15 Ariz. 66, 69, 136 Pac. 279. The whole theory of the State's case, so far as the charge of murder in the first degree is concerned, is based on the previous situation between Paula Medina and defendant and his efforts to force his unwelcome attentions upon her. Without evidence of this situation and the extent to which it had developed, defendant's conduct the night of the killing would be inexplicable on any other theory than that he was intoxicated and not

conscious of his acts, or that he was defending himself against an assault made upon him without reason or excuse by deceased. The evidence objected to tended to show the extent to which defendant's passions had been inflamed, and furnished proof of a motive for and intent to commit the crime of murder in the first degree. We think it was properly admitted.

Assignment 4–A is that the court erred in denying the motion to strike the above testimony. Necessarily, the same ruling follows.

Assignment 8–B is that the court improperly sustained the objection that it was leading, made to the question asked of defendant on his direct examination and referring to his claim of an assault made on him by Ornelas and De Luna: "Had they made any strikes at you that caused you to fall back?" It is practically admitted by counsel for defendant that the question was leading. Further, defendant, during other parts of his examination, testified in substance that they were assaulting him with large knives in their hands, which action caused him to retreat, so that he could not have been prejudiced in any manner by the ruling of the court, even had it been incorrect. This disposes of the assignments of error based on the admission and rejection of evidence. We come now to the assignments based on the instructions.

In considering these assignments, we must keep before us at all times the general rule that instructions must be considered as a whole and not piecemeal. This rule is freely admitted by defendant in theory, but it seems to us that it is repeatedly disregarded when the concrete instructions herein are discussed by him. In a case of this nature, it is obviously impossible that any one sentence or paragraph can contain all the instructions necessary to inform the jury as to the law applicable to the vari-

ous issues. It will, therefore, almost always be possible to pick out separate clauses, sentences, and even paragraphs which, standing alone, do not correctly state the law, either because they are incomplete statements of some proposition of law, or do not contain other propositions which are explanatory of or exceptions to the first. For this reason, it has always been held in this jurisdiction that the instructions must be considered as a whole, and that an assignment predicated on isolated paragraphs or portions thereof, which, standing alone, might be misleading, must fail. *Quong Yu* v. *Territory,* 12 Ariz. 183, 100 Pac. 462; *Lenord* v. *State,* 15 Ariz. 137, 137 Pac. 412; *Faltin* v. *State, supra.*

It is only when the instructions taken as a whole are such that it is reasonable to suppose the jury would be misled thereby that a case should be reversed for error therein. We think as good a test as any of whether specific sentences or phrases of the instructions contain reversible error is as follows: If any instruction directly contradicts the true rule of law so that the jury would be misled thereby on a material point, it is, of course, fatal; if, however, it is merely incomplete in itself, but when taken together with proper qualifications made in some other portion of the instructions it correctly states the law, it is not reversible error, unless it is so ambiguously worded that a reasonable man, taking the instructions as a whole, would be misled thereby. With this general rule to guide us, let us consider the specific assignments of error based on the instructions.

Assignment 6-A objects to the following instruction:

"Upon a trial for murder, the commission of the homicide by the defendant being proven, the burden of proving circumstances of mitigation or that justify or excuse it devolves upon him, unless the proof on the part of the prosecution tends to show that the

crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable, but the defendant need go no further than to raise in the minds of the jurors a reasonable doubt.''

This instruction was given in the case of *Bryant* v. *Territory*, 12 Ariz. 165, 100 Pac. 455, and this court. held that it, taken into consideration with the other general instructions therein given (which are similar to those of the case at bar), was correct. See, also, *Anderson* v. *Territory*, 9 Ariz. 50, 76 Pac. 636; *Halderman* v. *Territory*, 7 Ariz. 120, 60 Pac. 876; *Foster* v. *Territory*, 6 Ariz. 240, 56 Pac. 738.

Assignment 7–A is substantially that the court erred in reading to the jury the statutory definitions of murder, manslaughter and justifiable and excusable homicide. These definitions as given by the court were taken from the statute, and it is not contended they are not correct statements of the law, but it is urged that there is not a scintilla of evidence of a situation requiring any of certain portions of the instructions complained of; and, since there is none, they should not have been given. It is, of course, the general rule that instructions must be based on some theory of the case which may be found in the evidence, and, when not so predicated, they should not be given, as their tendency would be to mislead the jury. Under the evidence in this case, the jury might properly have returned a verdict of murder in the first degree, murder in the second degree, or manslaughter, or have acquitted the defendant on the ground of self-defense. In these circumstances, it was incumbent upon the court to define all these different offenses, and it was eminently correct to use the language of the statute when so doing. The instructions complained of, when examined as a whole, show that the trial court properly explained and limited them so as to confine them to some theory of the case as it might appear upon the evidence.

We are of the opinion that assignment 7–A is without merit.

The instruction complained of under assignment 8–A is a definition of the right of self-defense. It is taken *verbatim* from the statute, and has been given so often in this jurisdiction as to be considered correct as a matter of course.

Assignment 9–A is the same as 6–B. It reads as follows:

"In other words, unless you are satisfied beyond a reasonable doubt by the evidence in this case that the defendant shot and killed the deceased, you should, by your verdict, find him not guilty. If you are satisfied of such killing beyond a reasonable doubt, but are not satisfied beyond a reasonable doubt of the criminal intent, or that the circumstances attending the killing would indicate malice, you should, by your verdict, find him guilty of manslaughter."

Defendant contends this instruction is erroneous because it leads the jury to believe that they should find him guilty of manslaughter, if there was no criminal intent in the killing. By a strained construction, and if standing alone, it might be possible to wrest from it such a meaning; but, when taken with all the other instructions, we are satisfied that it correctly stated the law. Further, since the verdict was not one of manslaughter, defendant could not have been prejudiced thereby.

Assignment 10–A is that the following instruction was erroneous:

"Where one without fault is placed under circumstances sufficient to excite the fears of a reasonable man that another designs to take his life or to do him great bodily injury, and to afford grounds for the belief by him, as a reasonable man, that there is imminent danger of the accomplishment of this design, he may, if influenced by these fears alone, slay his assailant, and be justified by the appearances. But before a person thus situated can be justified in

taking the life of another, it must be made to appear from the evidence that the slayer's life was in imminent danger, or that he was in imminent danger of great bodily harm, or that it so appeared to him, as a reasonable man, and that the killing was necessary to prevent the taking of his own life, or the infliction upon himself of great bodily harm by the party slain, and unless the circumstances in this case, as shown by the evidence, were such that the life of the defendant was in imminent danger from the deceased, or that he was in imminent danger of receiving great bodily harm from the deceased, or that the appearances were such as to induce a reasonable man in the defendant's position to believe such to be the case, the act of the defendant in firing upon and killing the deceased was not in self defense, and the defendant was not justifiable therefor.''

The gist of the argument, as we understand it, is that, by the use of the words ''without fault'' in the instruction, defendant was deprived of his right to have his plea of self-defense considered by the jury, and that it placed upon him the burden of proof beyond a reasonable doubt that he was in imminent danger of death or serious bodily injury from deceased, and that the killing was necessary to preserve his own safety. We think the use of the phrase ''without fault'' was proper. If a defendant under certain circumstances at the time he kills is to blame for their existence, he is not justified in killing another on account of such circumstances, and then pleading self-defense. *Murphy* v. *State,* 33 Ariz. 336, 264 Pac. 685; *Carter* v. *State, supra.* Neither, when taken into consideration with all the other instructions, would it place upon defendant the burden of proving his plea of self-defense in the affirmative. The court specifically stated in other parts of the instructions that the defendant need go no further than to raise in the minds of the jurors a reasonable doubt as to any defense. We think this was sufficient.

Assignment of error 11–A is that the trial court refused to instruct the jury as to the general duties of the sheriff. We have examined the record carefully, and can see nothing therein calling for any such instruction. It is apparently claimed that the refusal of this instruction prevented defendant from showing that some of the state's witnesses were unduly interested in the case, and that their credibility was thus affected. It does not appear defendant ever offered any testimony bearing upon this point, but the court nevertheless instructed the jury that they might consider the interest which any witness appeared to have in the case; and defendant was certainly not precluded from arguing any interest which might have been shown by the evidence.

Assignment 12–A is that the court refused to give a certain instruction on self-defense. We have examined the requested instruction, and are of the opinion it was fully covered by the court of its own motion. Even though the requested instruction was correct, it was not error under these circumstances to refuse it. *Lawrence* v. *State, supra.*

The next assignment which we consider is 1–B. It is that the court erred in instructing the jury that, before defendant would be justified in killing the deceased, it must appear that he had no other reasonable means to avoid death or great bodily injury, and that it was his duty to avoid a conflict. Although the contrary rule obtains in many jurisdictions, it is the law in this state that a man in a place where he has the right to be is not obliged to follow the old English doctrine of retreat to the wall, but may stand his ground and kill his assailant to avoid death or great bodily harm. But it is not and never has been the law, even in Arizona, that a man who is a trespasser and in a place where he has no right to be may stand his ground and slay his assailant, and still claim self-defense, when by leaving such place

he might avoid the conflict. *Murphy* v. *State, supra.* Under the undisputed evidence in this case, defendant was in a place where he had no right to be, that he had been warned by the owners to stay away from, and at a time and under circumstances which made his presence utterly inexcusable. It was certainly his duty under such circumstances to avoid a conflict, if it were possible to do so without endangering his own life or bodily safety; and, if he failed to fulfill that duty, he was in no position to claim the killing was in self-defense.

Assignment 2–B is that the court erred in instructing the jury as follows:

" . . . If you are satisfied from the evidence beyond a reasonable doubt that he killed the deceased, and that when the fatal shot was fired that took the life, that he did it with the intent that the life should be taken thereby, you should find the defendant guilty of murder in the first degree."

This instruction, if standing alone, would present a most serious question, as it, of course, fails to state all the necessary ingredients of murder in the first degree. It is necessary, however, that we consider the instructions as a whole. On examining them, we are of the opinion that no reasonable juror could be misled. The court in dealing with this phase of the case—after having defined carefully and correctly the necessary ingredients of manslaughter, and the two degrees of murder, and of justifiable homicide—told the jury that they must find, in order to warrant a verdict of conviction, that the defendant shot and killed the deceased under such circumstances as rendered the killing murder or manslaughter; and that, if they found him guilty of some offense, but were not satisfied beyond a reasonable doubt as to which offense it was, they should find the defendant guilty of the lesser one. It then described the circumstances under which the jury might convict of manslaughter,

murder in the second degree, and murder in the first degree; and, while each of these latter instructions taken alone would be incorrect—not as misstating any of the ingredients of the offense, but as omitting some—we are satisfied that, from the instructions taken as a whole, the jury must have understood that in order to convict the defendant of murder in the first degree there must exist a killing without legal excuse, together with malice and a deliberate and premeditated intention to take life. While it is possible the instruction complained of might have been more carefully worded, we think it did not mislead the jury.

The next assignment of error is 3–B. The objection is to the following instruction:

" . . . It is only necessary that the act of killing be preceded by a concurrence of will, by deliberation and premeditation on the part of the slayer, and if such is the case, the killing would be murder of the first degree, no matter how rapidly these acts follow each other, or how quickly they may have been succeeded by the act of killing."

It is urged that this instruction should read:

"It is only necessary that the act of killing be preceded by and the *result of* a concurrence of will. . . . ," etc.

And the case of *People* v. *Maughs,* 149 Cal. 253, 86 Pac. 187, is cited as supporting the contention. The same question was presented to the Supreme Court of Idaho in the case of *State* v. *Dong Sing,* 35 Idaho 616, 208 Pac. 860, 862. In considering the contention made therein, and referring to *People* v. *Maughs, supra,* that court stated:

"We must assume that the jury were men of ordinary intelligence, and that they conscientiously applied such intelligence to an examination of the evidence under the instructions of the court. If they did they could not have failed to understand that, in

order to convict appellants of murder of the first degree, the murder of deceased must have been the result of the concurrence of will, deliberation, and premeditation on the part of appellants, notwithstanding a specific statement to that effect was lacking.''

We agree with the Supreme Court of Idaho that we should not attribute to the jury the degree of ignorance assumed by the Supreme Court of California in *State* v. *Maughs, supra.*

Assignment 4–B is that the court erred in charging the jury as follows:

''In this case it is not claimed by the prosecution that the homicide charged was committed in the perpetration of or the attempt to perpetrate any other felony, but it is claimed to be murder in the first degree as being wilful, deliberate and premeditated.''

And it is urged that nowhere does it appear that the state claimed the homicide to have been murder in the first degree, as being unlawful, deliberate and premeditated. The information in this case properly charged murder in the first degree, and the evidence shows that the only way in which it could have been such was on the theory that it was deliberate and premeditated. This being the case, the instruction was merely a statement by the court as to the only theory upon which murder in the first degree could be found in the information and the evidence considered together, and excluded from their consideration the other forms of such degree, and was not a comment on the evidence.

Assignment 7–B is that the court erred in giving the following instruction:

''If you are satisfied from the evidence in the case beyond a reasonable doubt that the defendant killed the deceased and that the manner of the killing showed that it was done from malice aforethought, either expressed or implied, but are not satisfied beyond a reasonable doubt that it was done with the

intent that he should take life, you should find him guilty of murder in the second degree.''

Here, again counsel has taken an isolated instruction and predicated error thereon. It is urged that this misled the jury into the belief that, before it could find defendant guilty of murder in the second degree, it must find that he did not intend to take the life of the deceased. As we stated before, this paragraph is merely one of the series given by the court in defining the different crimes included in the information and the evidence. Taken together, we are of the opinion that the jury could not have been mistaken in the meaning of the court. Further, the conviction was not of second degree murder.

This concludes the discussion of the specific assignments of error. While it is possible some of the instructions might have been more definitely worded so as to avoid any possible criticism, we are of the opinion that, taking them as a whole, they correctly state the law, and that no reasonable juror could have been misled thereby. The jury, as it had a right to do on the evidence, refused to accept defendant's claim of self-defense. Rejecting that, there was left only the question what degree of crime the homicide constituted. By their verdict, the jury has found the killing to be wilful, malicious, deliberate and premeditated, and we cannot say that evidence is not found in the record to sustain such verdict. The instructions as a whole favored the defendant rather than otherwise, and all the evidence presented was legally admissible. On the whole case, we are of the opinion that the trial was free from prejudicial error, and that substantial justice has been done.

The judgment of the superior court of Greenlee county is affirmed.

McALISTER, J., and ROSS, J., concur.