333 P.2d 280

Application of Leroy WILLIAMS, for a Writ of Habeas Corpus.

No. 6557.

Supreme Court of Arizona.

Dec. 17, 1958.

Rehearing Denied Jan. 14, 1959.

Alfred C. Marquez and Lawrence Ollason, Tucson, for appellant.

Robert Morrison, Atty. Gen., Raul H. Castro, County Atty., and H. E. Rogge, Jr., Chief Deputy County Atty., Tucson, for appellee.

LORNA E. LOCKWOOD, Superior Court Judge.

Appellant, Leroy Williams (hereinafter referred to as Williams or defendant), appeals from denial of his application for release from custody upon a writ of habeas corpus. Williams had been charged with first degree murder by complaint filed by the county attorney of Pima County, and a preliminary hearing was held on April 26, 1957, before a magistrate, who held Williams to answer on a charge of second degree murder.

On June 25, 1957, the matter came to trial before Honorable Frank E. Thomas, presiding judge in the Superior Court of Pima County, a jury was empaneled, the state presented its case in chief, and rested. Williams' counsel moved for a directed verdict, and the state moved to dismiss pursuant to A.R.S. § 13–1595, which reads as follows: .

"Procedure where proof shows higher offense; effect

"A. If upon the trial of any action it appears to the court by the testimony that the facts proved constitute an offense of a higher nature than that charged, the court may direct that the jury be discharged and all proceedings on the indictment or information suspended, and may order the commitment of the defendant, and if the of-

fense is bailable, direct in the order that the defendant may be admitted to bail in the amount fixed, which shall be specified in the order, to answer any indictment which may be returned, or any information which may be filed against him following a preliminary hearing, within thirty days after such suspension of proceedings by the court.

"B. If the defendant is committed or admitted to bail in order to hold him for a higher offense, as provided in subsection A, it is not an acquittal of the offense in which proceedings were suspended, and no plea of former jeopardy or former acquittal shall be sustained by reason thereof."

The court denied defendant's motion, granted the state's motion, discharged the jury without defendant Williams' consent, ordered all proceedings on the information charging second degree murder suspended, ordered the defendant committed to the custody of the sheriff without bond, and instructed the county attorney to file a new complaint in the justice court charging first degree murder, on the ground that the evidence presented at the trial showed that an offense of a higher nature than that charged had been committed.

The defendant filed a notice of appeal, and the county attorney filed a motion to dismiss the appeal, which latter motion was granted on July 9, 1957. Subsequent-ly, on July 10, 1957, the defendant applied for a writ of habeas corpus, on the grounds that he had been placed in jeopardy under the proceedings for second degree murder, and therefore could not be held on a sub-sequent charge of first degree murder, which would constitute double jeopardy, contrary to Article 2, Section 10, Arizona Constitution, and Amendment V, United State Constitution, and further that he was deprived of due process of law under Amendment XIV, United States Constitu-tion.

Upon hearing of the return of the writ of habeas corpus, before Honorable J. Mercer Johnson, Judge of Superior Court of Pima County, the court denied defend-ant's application for a discharge, finding that the jury as empaneled was not a legal jury, and the defendant had therefore never been in jeopardy on the charge of second degree murder. This ruling is the basis for defendant's assignment of error No. V, which we shall discuss first.

The basis of the court's finding that the jury was not a legal one was that pursuant to Rule 225, Rules of Criminal Procedure, 17 A.R.S., the state and the defendant shall each be allowed ten peremptory challenges if the offense charged is punishable by death or imprisonment for life. Second degree murder is punishable by imprison-ment from ten years to life. Therefore, in order to comply with Rule 225, to per-mit the number of peremptory challenges

provided therein, there should have been thirty-two jurors drawn. At the trial, however, only twenty-four jurors were drawn, sworn and examined. Both the state and the defendant exercised peremptory challenges, and the remaining twelve jurors were sworn to try the case. Nowhere in the record does it appear that any objection was made by either the state or the defendant to this discrepancy during the trial, either before or after the jury was sworn to try the case. This matter appears to have been raised first upon hearing of the application for habeas corpus, presumably by the court hearing the same. (There being no transcript of the hearing filed in this court we accept counsels' statement on this point.)

The lower court relied upon State v. Thompson, 68 Ariz. 386, 206 P.2d 1037, in finding that no legal jury had been sworn in the trial, the court stating:

"The Arizona Supreme Court in the case of State v. Thompson, 68 Ariz. 386 [206 P.2d 1037], has stated that a jury which is formed in such a manner that defendant is deprived of a substantial statutory right is not a lawful jury and that to impanel a jury in violation of law, in such a way as to deprive a party of his peremptory challenge, constitutes reversible error.

"It is therefore apparent from the record in the instant case that the jury as impaneled was not a legal jury; and that therefore the defendant could not be in jeopardy at the time the court discharged the jury."

We believe the distinguished judge misinterpreted the basis for this court's decision in the case cited. In that case there was no question as to whether a sufficient number of jurors had been called to permit the defendant to exercise the number of peremptory challenges allowed. Thirty-two jurors were called into the jury box for examination. All were examined by the court and counsel as to their qualifications to sit in the case. None was challenged for cause or excused by the court. Counsel were directed by the court to exercise the peremptory challenges granted by law, and did so. The clerk of the court, being directed by the court to call the names of the first twelve unchallenged jurors to compose the trial jury, inadvertently called the names of three of the jurors who had been peremptorily challenged by the defendant, and those jurors formed a part of the panel which was sworn to and did try the case and which rendered a verdict of guilty against the defendant. Neither the defendant nor defense counsel knew any of the jurors personally or by name, and in the shifting incident to the release of the twenty excused jurors, different seats were taken by those remaining, preventing recognition of those stricken by defense counsel. The roll was never

thereafter called during the trial, and it was not until after the verdict was rendered, and counsel for the defendant was checking the record that he discovered that the three jurors whom he had challenged peremptorily had been permitted to sit on the jury.

■ In that case we held that the right of peremptory challenge may be waived where fair opportunity has been given to exercise it, and when the defendant has failed to do so it is deemed to have been waived voluntarily. However, under the circumstances related above, it was held that defense counsel, not having a fair opportunity to discover that three jurors against whom he had exercised his peremptory challenge were actually serving upon the jury until after the verdict was returned, did not thereby voluntarily waive his right to have the case tried by jurors against whom he had not exercised a peremptory challenge.

■ The right to peremptory challenge is a right which may not be lost or impaired, but, as wth other rights, it may be waived voluntarily; further, it is a right of rejection, not of selection. State v. Thompson, supra, and cases cited. There is nothing in the record in this case which indicates that defendant was deceived, by inadvertence or otherwise, into a position where jurors who had actually been rejected were serving on the trial jury. Nor does it appear that defendant objected to the fact that less than the number of jurors to which he and the state were entitled in order to exercise the number of peremptory challenges permitted, were called into the box. On the contrary, by failure to raise this question, the conduct of both defendant and the state warrants an inference that such right was voluntarily waived.

We hold, therefore, that both the state and defendant voluntarily waived their rights to a panel of thirty-two jurors, when they accepted without objection the panel of twenty-four, exercised peremptory challenges, and permitted the trial to proceed with the twelve jurors who remained unchallenged. The jury was, therefore, a legal jury empowered under the law to try the case.

■ We come, then, to defendant's assignment of error No. II, which is that A.R.S. § 13–1595 is unconstitutional and contrary to Article 2, Section 10, of the Arizona State Constitution. This section reads as quoted above.

Defendant urges in this regard that the proceedings had at the trial on the second degree murder charge placed him in jeopardy, and that he could not be thereafter charged with first degree murder since it was the identical offense for which he had already been in jeopardy. The record shows as follows:

The jury was drawn and sworn to try the case, some evidence was adduced by the state, and thereafter, without defendant's consent, on motion of the county attorney, the court ordered all proceedings on such charge suspended and that the defendant be committed to the custody of the sheriff without bond, instructing the county attorney to file a new complaint charging first degree murder, under the provisions of Section 13–1595, supra.

Counsel for defendant cites Westover v. State, 66 Ariz. 145, 185 P.2d 315, in which this court held that a defendant is in jeopardy after a jury has been selected and sworn. He points out that though there are certain recognized exceptions, they are based upon the theory that the reaching of a legal verdict would be impossible under the particular circumstances, hence the defendant has never actually been in jeopardy. For example, if the jury is unable to reach a verdict (commonly referred to as a "hung jury"), or if the presiding judge has become ill during the progress of the trial and is unable to proceed with it, even though the jury be discharged without defendant's consent, it has been consistently held that the defendant could not have been in jeopardy. People ex rel. Brinkman v. Barr, 248 N.Y. 126, 161 N.E. 444; State ex rel. Dato v. Himes, 134 Fla. 675, 184 So. 244. See also Rule 304, Rules of Criminal Procedure.

Defense counsel urges, however, that such was not the case here. Had the court not granted the state's motion pursuant to Section 13–1595, supra, there was nothing to prevent the submission of the case to the jury, which might have arrived at a verdict.

We agree with defendant's contention that the proceedings had did place him in jeopardy on the charge contained in the information second degree murder.

The next question, then, is whether a subsequent charge of first degree murder, based on the same facts charged in the second degree information, is the "same offense" as second degree murder.

The general rule seems well stated in Warren v. State, 79 Neb. 526, 113 N.W. 143, 144, as follows:

"* * * 'A test almost universally applied to determine the identity of the offenses is to ascertain the identity in character and effect of the evidence in both cases. If the evidence which is necessary to support the second indictment was admissible under the former, related to the same crime, and was sufficient, if believed by the jury, to have warranted a conviction of that crime, the offenses are identical, and a plea of former conviction or acquittal is a bar.' 12 Cyc. 280, et seq."

Let us then determine whether first and second degree murder constitute but one, or two separate offenses under this test.

"Murder" is defined in A.R.S. § 13–451 as follows:

"A. Murder is the unlawful killing of a human being with malice aforethought.

"B. Malice aforethought may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied when no considerable provocation appears or when the circumstances attending the killing show an abandoned and malignant heart."

A.R.S. § 13–452, defines first and second degrees of murder:

"A murder which is perpetrated by means of poison or lying in wait, torture or by any other kind of wilful, deliberate and premeditated killing, or which is committed in the perpetration of, or attempt to perpetrate, arson, rape, robbery, burglary or mayhem, is murder of the first degree. All other kinds of murder are of the second degree."

As was stated by Justice Ross, in delivering the opinion of this court in the case of Singh v. State, 35 Ariz. 432, 280 P. 672, 677, 67 A.L.R. 129:

"It is the most atrocious murders that are classed as of the first degree and the least atrocious of the second degree, but both degrees are just grades of the same high crime—both consist in 'the unlawful killing of a human being with malice aforethought.' * * *"

And it has been held repeatedly by this court that it is the duty of a trial court in homicide cases to instruct the jury on every *grade of the offense* the evidence tends to show the defendant guilty of, and, conversely, it is not the duty of the court to instruct as to other *grades of the offense,* or *grades* the evidence shows he could not be guilty of. Antone v. State, 49 Ariz. 168, 65 P.2d 646; Miranda v. State, 42 Ariz. 358, 26 P.2d 241; Singh v. State, supra; Campbell v. Territory, 14 Ariz. 109, 125 P. 717.

The statute in question, under which the trial court purported to act upon the state's motion (A.R.S. § 13–1595), provides:

"If upon the trial of any action it appears to the court by the testimony that the facts proved constitute an *offense* of a higher nature than that charged, * * *." (Emphasis supplied.)

the court may discharge the jury, suspend all proceedings under the information or

indictment, and direct proceedings to hold the defendant for the "higher offense". We cannot say that this statute per se is unconstitutional, as attempting to authorize the defendant to be twice put in jeopardy for the same offense. It is quite possible that the "offense of a higher nature" may involve the same *act* on the part of the defendant, but there may be entirely different elements requisite to sustain a conviction for each offense, according to the different statutory provisions.

For example, a person may be charged with unlawfully and wilfully disturbing or attempting to disturb any lawful meeting or assembly, A.R.S. § 13–375, and if the facts clearly show that this was done when the defendant threatened with a gun a person attending such meeting, the court may properly invoke the provisions of Section 13–1595, supra, suspend further proceedings and direct that the defendant be held upon the higher offense of assault with a deadly weapon, or assault with intent to commit murder. The *act* committed by the defendant in each case is the same, but the elements necessary to constitute the particular criminal *offense* are different, and a conviction of one would not necessarily bar a conviction of the other. Hence, the defendant could not properly claim that he had been placed twice in jeopardy for the same offense.

However, where the elements necessary to sustain a conviction for murder of the second degree are implicit in the evidence necessary to sustain a conviction of murder of the first degree, the defendant having once been placed in jeopardy, after the swearing of the jury on the charge of second degree, cannot again be placed in jeopardy by suspension of the proceedings and trial had upon first degree, for the reason that this would violate Article 2, Section 10, of the Constitution. It is our duty to give the statute, Section 13–1595, an interpretation which will, if possible, sustain its constitutionality, and we therefore hold that the construction of the statute applied by the trial court was erroneous as giving to it an unconstitutional application.

■ From the entire proceedings in this case, it is evident that both the county attorney, acting upon the evidence in his possession when he filed the original criminal complaint, and the trial judge, after hearing the state's evidence, felt that the facts might well justify a jury in believing the defendant guilty of first degree murder. The magistrate who conducted the preliminary hearing, however, refused to hold the defendant to answer to first degree, and bound him over on the charge of second degree. The evidence adduced at the preliminary hearing not being before us, we cannot say what prompted the magistrate to hold the defendant on the lesser charge. However, in a charge as grave as that of first degree murder, it would seem that a magistrate conducting a preliminary hearing should be

118

mindful that his duty is not to determine the ultimate guilt or innocence of a defendant, or determine the degree of the crime charged, but only to determine whether there is probable cause to believe defendant guilty of the offense charged, and leave to the trial tribunal the final determination of the application of the law to the facts, and leave to the jury the question as to whether defendant is guilty of the offense charged or of an included offense. As a matter of fact, Rule 32, Rules of Criminal Procedure, limits the power of the magistrate, under these circumstances, to either hold the defendant to answer for the offense charged, to direct the filing of a new complaint, or to discharge him.

Since the ruling of the trial court upon the habeas corpus must be reversed for the foregoing reasons, it is unnecessary to discuss the remaining assignments of error.

The judgment is reversed and the case is remanded with instructions that the defendant be discharged upon his petition in habeas corpus.

UDALL, C. J., and WINDES, PHELPS and STRUCKMEYER, JJ., concur.

JOHNSON, J., being disqualified, the Honorable LORNA E. LOCKWOOD, Judge of Superior Court, Maricopa County, was called to sit in his stead and participated in the determination of this appeal.