389 P.2d 255

**STATE of Arizona, Appellee,**

**v.**

**John Wesley SCHROEDER, Appellant.**

**No. 1284.**

Supreme Court of Arizona.

En Banc.

Feb. 13, 1964.

Rehearing Denied March 24, 1964.

---

1. Sections 13–492, 13–614 and 13–643, A.R.S. (1956) respectively.

Robert W. Pickrell, Atty. Gen., and Philip M. Haggerty, Asst. Atty. Gen., for appellee.

Peterson, Estrada & Matz, by Gerald A. Machmer, Phoenix, for appellant.

UDALL, Chief Justice.

This appeal is from a conviction of first-degree murder in the Superior Court of Maricopa County. The evidence shows that on July 14, 1960, the defendant, in company with three friends, Piersall, Hill and Mooney, drove to the home of Lloyde Anderson, the deceased, in Scottsdale. The avowed purpose of their visit was to collect a debt owing from Anderson to Piersall for a television set. It is not clear whether defendant was armed and there is some direct testimony to the effect that he was not.

At least one of his companions, however, carried a pistol.

This party arrived at the Anderson home at approximately one-thirty P.M. Some discussion then took place between Anderson and Piersall in one of the bedrooms. One James W. Evans and his brother Jimmy Reed Evans who were neighbors and friends of the Anderson family also took part in the conversation, but it does not appear that Hill, Mooney or Schroeder participated or that they were even in the bedroom at the time. A few minutes later Anderson received a telephone call from his wife whose car had stalled nearby. He and the Evans brothers left the house to go to her assistance while defendant and his companions stayed behind.

While he was gone Anderson called the Scottsdale police. Officers Young and Reed were dispatched to the scene and arrived at the house just as Anderson and the Evans brothers returned. They all entered the house but found it apparently empty. According to Mooney's testimony, when the men inside had seen the police arrive, they hid themselves in a closet. Evans and the police then walked out into the yard and commenced a search of the surrounding premises. At this point, defendant burst out of his hiding place with a gun in his hand, berating Anderson for "calling the cops" and, according to some of the witnesses, threatening to kill him. He seized Anderson around the neck with his left

arm and holding a gun in his back and using his body as a shield, marched out the front door. He ordered Young and Reed to "get back" and threatened again to "shoot this man in the back."

Officer Young was standing immediately outside the front door and, as the defendant emerged with his hostage, drew his gun and struck him a solid blow on the head. Young struck a second blow, a glancing one, and defendant immediately fired point blank at Anderson's back. As Anderson slumped to the ground, the defendant quickly turned and shot Young through the body. He was immediately thereafter struck by a fusillade of bullets fired by both officers.

As a result of the single bullet wound in his back, Lloyde Anderson died within a few hours after the shooting. Defendant was charged with his murder, brought to trial and convicted. A.R.S. § 13–453 requires that the jury decide the penalty for murder of the first degree and the death sentence was accordingly fixed in this case.

At the outset, the State questions our jurisdiction because the statutory time limit had expired before the notice of appeal was filed. This same issue was previously decided on January 22, 1963 when we denied a motion to dismiss the appeal on that ground. The question is so fundamental, however, that it merits reconsideration and elaboration in a formal opinion.

■ The notice of appeal was filed August 1, 1962, two days after the deadline established by Rule of Criminal Procedure 348, 17 A.R.S. Within a few weeks the State Bar commenced disciplinary proceedings against defendant's trial counsel for alleged misconduct in connection with other matters. In the Matter of a Member of the State Bar of Arizona, 95 Ariz. 268, 389 P.2d 263. Said proceedings are a matter of record in this court and a proper subject of judicial notice. MacRae v. MacRae, 57 Ariz. 157, 112 P.2d 213 (1941). It appears, according to the Administrative Committee findings, that defense counsel, during the sixty-day statutory period for filing appeals, was conducting his practice with considerably less than that degree of meticulous attention required of one who occupies a fiduciary relationship with his client and the court. He was apparently suffering from alcoholism and, in the other matters he was handling, had failed to make certain motions, appearances, or take other routine actions, and several times misinformed clients on the status of their affairs. Presumably, it was this development that prompted the appointment of different counsel to brief and argue the present case in this court.

■ From the entire record and transcript, the defense presented at trial appears fully adequate. We think, however, the situation during the sixty-day period fol-

lowing judgment must be considered analogous to those involving death or incapacity of attorneys. Under such circumstances, dismissal for slight delay in filing criminal appeals seems inconsonant with sound policy and fundamental justice. Cf., Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

As his first assignment of error, defendant urges the failure of the court to instruct the jury on the lesser included offenses of second-degree murder and manslaughter. He argues that there was evidence from which the jury could find that he committed the homicide without malice aforethought, a *sina qua non* of murder in any degree, A.R.S. § 13–451, or without premeditation and deliberation, requisite for murder of the first degree. A.R.S. § 13–452. In support of this proposition he points to the undisputed testimony that he was struck a staggering blow to the head immediately before he fired the fatal shot. From this fact alone, he contends, the jury could infer that the shot was not intentionally fired. He also relies upon Mooney's testimony to the effect that the gun "went off" when defendant was struck.

█ Under our holdings, instructions on lesser offenses are justified only when there is evidence upon which the jury could convict of a lesser offense and, at the same time, find that the state had failed to prove an element of the greater crime. Application of Williams, 85 Ariz. 109, 333 P.2d 280 (1958); Antone v. State, 49 Ariz. 168, 65 P.2d 646 (1937). In other words, the state of the record must not be such that defendant can only be guilty of the crime charged or not guilty at all. When the sole defense to a charge of murder is an alibi, for example, or a plea of insanity, no instruction on included crimes is necessary. For in these cases, if the jury accepts defendant's version of the killing, they must acquit; if not, and the state's proof is otherwise sufficient, the only alternative is conviction of the offense charged. See State v. Fouts, 79 Ohio App. 255, 72 N.E.2d 286, cert. denied, 331 U.S. 853, 67 S.Ct. 1738, 91 L.Ed. 1861 (1947) (alibi); Braunie v. State, 105 Neb. 355, 180 N.W. 567, 12 A.L.R. 658 (1920) (insanity).

█ There remains the possibility, of course, that the jury might simply disbelieve the state's evidence on one element of the crime. If so, it is argued, conviction of a lesser offense is still possible. This reasoning, however, would require instructions on all offenses theoretically included in every criminal information. The law does not require or even permit such a procedure. State v. Hicks, 241 N.C. 156, 84 S.E.2d 545 (1954). See also, State v. Patterson, 172 Ohio St. 319, 175 N.E.2d 741 (1961). In the case at bar, however, defendant urges that the state's own evidence was in conflict on the issues of malice and premeditation and affirmatively raised the possibility

that the shooting was accidental. We cannot accept this contention.

■ Manslaughter was clearly not involved. A.R.S. § 13–456 provides:

"Manslaughter is of two kinds:

"1. Voluntary, upon a sudden quarrel or heat of passion.

"2. Involuntary, in the commission of an unlawful act not amounting to a felony, or in the commission of a lawful act which might produce death in an unlawful manner, or without due caution and circumspection."

There is nothing in the record which suggests that this killing was done "upon a sudden quarrel or heat of passion." And while defendant's unlawful actions at the time of the shooting would not support a charge of felony murder under A.R.S. § 13–452, they nonetheless amounted to felonious conduct, viz., kidnapping under A.R.S. § 13–491, and obstructing justice under A.R.S. § 13–541.

■ Nor do we think there was evidence from which the jury could have convicted of murder in the second degree. That offense is committed by the unlawful killing of a human being with malice aforethought, A.R.S. § 13–451, but without deliberation and premeditation. A.R.S. § 13–452. "Deliberation" connotes an intentional killing. An intent to kill is presumed from the use of a deadly weapon and the burden is

then shifted to the defendant to come forward with evidence of circumstances that excuse the killing. State v. Preis, 89 Ariz. 336, 362 P.2d 660 (1961). Defendant relies on the following testimony by the witness Mooney:

"Well, the policeman, he stood aside for I guess about three or four seconds, just time enough for Mr. Schroeder to pass, and he hit Mr. Schroeder up beside the head with a pistol, and at the time he hit Mr. Schroeder up beside the head with a pistol, a gun went off. It went off or Mr. Schroeder shot the guy, I don't know for sure. I wasn't paying much attention to it."

He was then asked, on cross-examination:

"Q. After he was hit, do you have a mental picture of Mr. Schroeder's reactions?

"A. Yes, sir. Mr. Schroeder shook his head like he was fixing to go to his knees or something.

"Q. Did his knees look like they were going to cave in at all?

"A. No, sir."

The most that can be said of this testimony is that it failed to establish that Schroeder had fired the shot heard by the witness. He testified that "a gun went off." Assuming it was defendant's gun it amounted to a statement that his gun was discharged but left open the question whether it was delib-

erately fired. Far from being affirmative evidence of an accidental shooting, Mooney's testimony merely failed to establish an essential part of the state's case. This deficiency was adequately covered by other evidence and all the statutory elements of first-degree murder were eventually established.

Even if Mooney's statements can be said to raise the possibility that the gun was accidentally fired, he later testified in more detail:

"Q. Do you recall the length of time between this taking this revolver and slapping Mr. Schroeder across the side of the head, from that time until this shot was discharged?

"A. It was in an instant of a minute.

"Q. But it occurred after the hitting?

"A. Yes, sir."

This enlargement of the previous testimony explains what might otherwise have been an inference arising from the language relied upon by defendant. Schroeder was struck on the head by Young; he did not sag or fall or drop his weapon. Instead he almost immediately—"in an instant"—responded by carrying out his announced threat to kill Anderson.

Subsequent witnesses testified that Schroeder never lost consciousness and that he appeared in full possession of his faculties at all times during the affray. His action in whirling and almost simultaneously firing upon Young, a split second after shooting Anderson, belies the notion that Anderson's killing was accidental.

 The second assignment of error relates to references by prosecution witnesses to prior bad acts of defendant. The only testimony which meets this description are statements by both officers to the effect that Anderson had told them there was a man at his home who was trying to rob him and their statements that they checked on defendant's car to see if it was stolen. None of these statements are within the rule which excludes reference to prior crimes of defendant. Not only are they not references to actual past misconduct, but they also come under the familiar principles that crimes or conduct directly linked with the commission of the offense charged are relevant circumstances and therefore properly admitted. People v. Coefield, 37 Cal.2d 865, 236 P.2d 570 (1951) ; State v. Rand, 238 Iowa 250, 25 N.W.2d 800, 170 A.L.R. 289 (1947). Furthermore, the statements which may have implied that defendant had stolen a car could not have been prejudicial for the reason that subsequent testimony clearly established that the car was his own.

 The final assignment of error, that the trial judge commented on the evidence and that the prosecuting attorney was guilty of misconduct are likewise unsupported by

the record. The alleged "comments" were questions put to witnesses by the court for the purpose of clarifying their testimony. Officer Young, for example, stated:

"A. [The defendant] had the gun in Schroeder's back or against Schroeder's back and his left arm around Schroeder's neck holding him as hostage.

"Q. And what happened?

"THE COURT: Wait a moment. Are the names correct?

"THE WITNESS: Sir? I mean in Anderson's back. Correction."

The question asked by the court would have occurred to any listener. Young had just testified that defendant had a gun in *Anderson's* back and the quoted testimony was an obvious misstatement. There was no expression of judicial opinion on the evidence which amounted to a constitutionally prohibited "comment".

■ The "misconduct" of the prosecuting attorney complained of, occurred on re-direct examination of Young. He was asked if he had ever contended with a "more dangerous" person than Schroeder. We have some doubt that the question was so inflammatory as to demand reversal, as defendant contends. Had the witness answered, and this line of questioning been pursued, serious prejudice might have resulted. But the defense counsel made immediate objection and was sustained. Furthermore, the question was asked only after Young had been examined at length about his police training and experience. Defense counsel had suggested openly that Young exercised poor judgment in his handling of the situation, that he had not followed standard police procedures and that his past experience left him ill-equipped to cope with an emergency such as this one. Whether such a line of questioning was appropriate is moot. For in any event, this attempted impeachment made it proper for the prosecution to rehabilitate the witness by showing that even the most experienced officers rarely encountered such a dangerous situation and that Young's judgment was the best possible under the circumstances. We hold there was no error.

Affirmed.

LOCKWOOD, V. C. J., and STRUCK-MEYER, BERNSTEIN and JENNINGS, JJ., concur.