492 P.2d 697

**The STATE of Arizona, Appellee,**

v.

**Esequiel Gallegos RAMOS, aka Esequiel
Ramos Gallegos, Appellant.**

**No. 2203.**

Supreme Court of Arizona,
In Banc.

Jan. 13, 1972.

Gary K. Nelson, Atty. Gen., by William P. Dixon, Asst. Atty. Gen., Phoenix, for appellee; Professor Joel Jay Finer, College of Law, Univ. of Ariz., Tucson, of counsel.

Ross P. Lee, Maricopa County Public Defender, by James H. Kemper, Deputy Public Defender, Phoenix, for appellant.

UDALL, Vice Chief Justice.

This is an appeal by Esequiel Gallegos Ramos also known as Esequiel Ramos Gallegos hereinafter referred to as "defendant" from a judgment of conviction entered upon a jury verdict finding him guilty of second degree murder and from a sentence imposed thereon.

An Information was filed against the defendant on October 9, 1969, in the Superior Court of Maricopa County charging him with second degree murder in the death of Cruz Sanchez Perez on the 19th day of July, 1969. A plea of not guilty was entered on October 15, 1969 and the defendant was brought to trial in February of 1970. The jury was unable to arrive at a verdict and a mistrial was declared.

The case came on for a second trial during the month of April, 1970, on the charge of second degree murder. The jury returned a verdict finding the defendant guilty of second degree murder and the court entered judgment on the verdict finding defendant guilty as charged and sentenced him to serve not less than 10 nor more than 15 years in the Arizona State Penitentiary.

There was a conflict in the evidence presented at trial. The State's witnesses testified that the defendant and the victim on the evening in question were at the Shamrock Bar in Buckeye, that a quarrel arose between the two and that the defendant was the apparent aggressor. The defendant was escorted from the bar but later returned. The defendant's testimony charged the victim with being the aggressor in the fight and denied the testimony of the State's witness who testified that after defendant re-entered the bar he showed a knife concealed in his boot to one Timoteo Esquivel and that he shook his fist at the victim and demanded to see him in the morning as he was leaving the bar for the second time.

Soon thereafter, all the parties who were at the bar with the victim and the defendant left, and went to the labor camp where they lived. Again there was a conflict between the State's witnesses and the defendant as to the actual facts leading up to the homicide. The State's evidence showed that first the defendant, and then Timoteo Esquivel, knocked at one Tony Torres' home where the victim was visiting, in an attempt to get Perez to come out, and that when he finally emerged, the defendant who was underneath a nearby tree came over. A fight subsequently started, which resulted in the stabbing of Cruz Perez, who died shortly thereafter. The defendant testified that he returned to the camp and while feeding his cats outside, was attacked by Perez and defendant either stabbed him in the course of the fight or that Perez accidentally fell in the course of the fight on the knife he was using to cut the meat for the cats.

Upon his arrest, defendant made statements to the police which were admitted over defendant's objections and which proved to be inconsistent with his testimony at trial.

Defendant sets forth three questions for this Court to consider on appeal:

1. Was the trial court in error when it refused to instruct the jury that it could find the defendant guilty of the lesser included offense of manslaughter?

2. Did the trial court make a sufficient finding as to the voluntariness of inculpatory statements allegedly made by the defendant to the police officers?

3. Was it error for the trial court to forbid defendant to cross-examine the State's witness regarding the fact that he had been charged with the same crime and then released?

## PROPOSED MANSLAUGHTER INSTRUCTION

▮▮▮ Defendant contended that the testimony at trial shows that he might have been found guilty of manslaughter: Voluntary homicide, upon a sudden quarrel or heat of passion, and that the trial court erred in refusing to give his requested instruction on this point. The law is well settled in Arizona that a court has a duty to instruct the jury on every degree of homicide embraced in the information. State v. Madden, 104 Ariz. 111, 449 P.2d 39 (1969); State v. Schroeder, 95 Ariz. 255, 389 P.2d 255 (1964); Application of Williams, 85 Ariz. 109, 333 P.2d 280 (1959). In this case, there is no doubt but that manslaughter was embraced in the information charging second degree murder. The only question is whether the evidence presented at the trial showed that the defendant might have been guilty of manslaughter rather than second degree murder.

We believe the evidence presented at trial justified an appropriate manslaughter instruction. Where defendant's testimony establishes the elements of manslaughter, as it did in this case, he is entitled to present his theory to the jury for their consideration since the court must instruct on every grade of offense which the evidence tends to show the defendant guilty. State v. Hickson, 104 Ariz. 218, 450 P.2d 408 (1969); State v. Madden, supra. The Court does not weigh evidence. While the State presented a strong case against the defendant's account of the facts, the defendant, nevertheless, has a right to present his theory to the jury and the jury has a right, if it so chooses, to believe the defendant in the face of evidence to the contrary. The conflicting statements made by the defendant do not affect this duty. These inconsistencies may impeach the defendant's credibility in the eyes of the jury but do not affect the defendant's right to have his version of the happenings presented for consideration in light of the crime charged and possible lesser included crimes.

The State contends that the defendant relies upon the defense of self-defense and where the defendant's version of the killing could result only in a conviction of the crime charged or an acquittal, there is no duty to instruct on a lesser included crime. There is no question but that instructions must be based on some theory which is founded in the evidence and when not so predicated, they should not be given. State v. Randall, 94 Ariz. 417, 385 P.2d 709 (1963); Macias v. State, 36 Ariz. 140, 283 P. 711 (1929). The cases the State relies upon all stand for the proposition that where there is nothing in the record at all to indicate that a killing was done upon "a sudden quarrel or in the heat of passion" no manslaughter instruction need be given. Thus, in State v. Brady, 105 Ariz. 190, 461 P.2d 488 (1969); State v. Madden, supra, and Miranda v. State, 42 Ariz. 358, 26 P.2d 241 (1933), cases relied upon by the appellee, the state of the record was such that the defendant could only be guilty of the crime charged or not guilty at all. See also Antone v. State, 49 Ariz. 168, 65 P.2d 646 (1937), and State v. Schroeder, supra.[1] While counsel in the present case relied heavily upon self-defense, the record as evidenced by defendant's own testimony established a case of manslaughter, and if the jury believed defendant's account, they could have properly convicted him of manslaughter upon the appropriate instructions.

Thus, we hold that the trial court committed reversible error in refusing to instruct the jury on a possible manslaughter conviction.

## FINDING OF VOLUNTARINESS

▮▮▮ It is necessary to discuss the remaining points in order to guide the trial court upon remand. The defendant on appeal also challenges the voluntariness of the inculpatory statements made to the

1. In these cases, the requested manslaughter instruction was refused; in each one, the defendant's testimony, if believed by the jury, could only have resulted in an acquittal since no case for manslaughter was presented in the evidence.

police. Upon a hearing out of the presence of the jury on the question of voluntariness, the trial court concluded as follows: "Objection overruled. The court finds that there was an intelligent waiver." (R.T. 361). The defendant contends and we agree that this finding by the court did not constitute a specific ruling on voluntariness in accordance with the standard set in State v. Costello, 97 Ariz. 220, 399 P.2d 119 (1965) and State v. Owen, 96 Ariz. 274, 394 P.2d 206 (1964). In *Owen*, this Court held that the trial court is required to make a definite determination as to the voluntariness of the purported statement before it could be admitted. A finding that a waiver was made cannot be construed to be a "definite determination" as to the voluntariness of the statements. For this reason, we order that upon remand a hearing be held to determine the voluntariness of the statements and that a definite finding be made as to the voluntariness or involuntariness of these statements.

## LIMITATION ON CROSS-EXAMINATION

 The final question raised concerns the limitation placed on cross-examination by the trial court. Timoteo Esquivel was a key State witness. It appears that immediately after the killing of Perez, Esquivel was himself arrested and charged with that crime. He was released the next day and the defendant was arrested. The trial court granted the State's motion made in advance to prohibit any cross-examination of this witness as to his arrest. While the trial court has discretion in matters such as this, the policy in this State, as in most jurisdictions, has always been to allow the broadest scope of cross-examination in order to meet the accused's right of confrontation. State v. Holden, 88 Ariz. 43, 352 P.2d 705 (1960); State v. Rothe, 74 Ariz. 382, 249 P.2d 946 (1952). In *Holden* we held that "a party against whom a witness is produced has a right to show everything which may in the slightest degree affect his credibility." 88 Ariz. at 54, 352 P.2d at 706. See also, Fuller v. State, 23 Ariz. 489, 205 P. 324 (1922); State v. Aldrich, 75 Ariz. 53, 251 P.2d 653 (1952).

Thus, we believe the trial court abused its discretion in restricting and limiting the cross-examination of this witness. The jury has a right to know any fact which tends to show a witness is biased, prejudiced or hostile in passing on that witness' credibility. State v. Rothe, supra; Fuller v. State, supra; Udall, Arizona Law of Evidence, § 65. The fact that the witness was charged with the very same crime defendant is charged with certainly falls within this area. Even though the charges were dropped, the inquiry into this is relevant to show possible motive or even hostility generated by the fact that he was once arrested and charged with the crime another committed.

Reversed and remanded for a new trial.

HAYS, C. J., and STRUCKMEYER, LOCKWOOD and CAMERON, JJ., concur.