571 P.2d 1027

The STATE of Arizona, Appellee,

v.

Charles LACQUEY, Appellant.

No. 3368.

Supreme Court of Arizona,
In Banc.

Nov. 15, 1977.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer III and R. Wayne Ford, Asst. Attys. Gen., Phoenix, for appellee.

Alexander Russin, Holbrook, for appellant.

Charles Lacquey, in pro. per.

CAMERON, Chief Justice.

The defendant, Charles Lacquey, was indicted and tried on an open charge of murder of his wife. On 26 September 1975, a jury found him guilty of murder in the first degree, A.R.S. §§ 13–451 and 452, and he was sentenced to life imprisonment without possibility of parole until the completion of 25 calendar years. A.R.S. § 13–453. From the conviction and sentence the defendant appeals.

We have jurisdiction pursuant to A.R.S. § 13–1711 and A.R.S. § 12–120.21.

Three issues are raised by defendant's attorney on appeal:

1. Did the trial court err in refusing to direct a verdict of acquittal on the charge of first degree murder?
2. Was the defendant prejudiced by the fact that prior to the homicide he had consulted on a civil matter with the law partner of the prosecutor?
3. Should the trial court have granted a continuance or a mistrial when a witness failed to appear at trial?

The defendant has also filed a brief in propria persona in which he raises numerous claims of error.

The facts necessary for a determination of this matter on appeal are as follows. On 4 July 1975, Charles Lacquey and his wife Carol attended the Fourth of July Parade in Show Low, Arizona. Afterwards, around noon, they went to Bill's Bar. The defend-

ant had two or three beers there and then, leaving his wife behind, he drove a friend to another bar, the Basket House. The defendant stayed there for several hours drinking and shooting pool. No one saw him leave, but witnesses later testified that his pickup truck was no longer at the entrance to the Basket House at 6 p.m. Other witnesses testified that Carol Lacquey left Bill's Bar around 5 p.m. after the bartender refused to serve her any more drinks because of her inebriated condition. The next morning, 5 July 1975, the Navajo County Sheriff's Deputies were summoned by Charles Lacquey to the trailer that he and his wife occupied. When they arrived they discovered the bruised and beaten body of Carol in a bed. Charles Lacquey was arrested that day on suspicion of murder.

On 9 July 1975, the defendant gave a taped statement to sheriff's deputies after receiving his *Miranda* warnings. This tape was played for the jury at the trial. In it the defendant said that he consumed ten to twelve bourbon drinks as well as beer at the Basket House. He said that he then drove back to Bill's Bar to pick up his wife but the establishment appeared to be close to closing. He estimates that this was around midnight. He did not remember driving home. When he entered the trailer, his wife accosted him and struck him on the forehead with her hand for deserting her at Bill's Bar. In his statement the defendant said that at that moment:

" * * * I must have went berserk for a few moments. I remember all of a sudden I caught myself and I had my hands around her throat. I had blackout or berserk or whatever you might want to call it * * *."

The defendant claimed in his taped statement that his wife then cleaned herself up and went to bed. Later that night he discovered her on the floor. He attempted to revive her but she was dead.

At the trial, the pathologist who performed the autopsy on the deceased testified that the cause of death was multiple external and internal injuries caused by impact with a blunt instrument like a fist or a boot. He estimated that time of death was between 7:30 p.m., 4 July, and 1:30 a.m., 5 July. In his opinion, the victim could have survived no more than two hours after the infliction of these injuries, and then only in an unconscious state.

At trial the defendant testified that he arrived home around midnight, saw his wife in bed and went to bed in another bedroom. He woke up later and found her lying on the floor. He denied assaulting her.

The trial court instructed the jury on first and second degree murder; voluntary and involuntary manslaughter. The court also instructed the jury on the effect of intoxication on specific intent. The jury returned a verdict of first degree murder.

## DO THE FACTS SHOW PREMEDITATION?

At trial the defendant made a timely motion for a directed verdict of acquittal on the charge of first degree murder on the basis that the evidence presented was insufficient as a matter of law for the jury to find the requisite premeditation and deliberation. The trial court denied the motion on the basis that premeditation and deliberation could be inferred from the nature and extent of the beating inflicted upon the victim.

Our statute reads:

"§ 13–452.  *Degrees of murder*

"A murder which is perpetrated by means of poison or lying in wait, torture or by any other kind of wilful, deliberate or premeditated killing, or which is committed in avoiding or preventing lawful arrest or effecting an escape from legal custody, or in the perpetration of, or attempt to perpetrate, arson, rape in the first degree, robbery, burglary, kidnapping, or mayhem, or sexual molestation of a child under the age of thirteen years, is murder of the first degree. All other kinds of murder are of the second degree. As amended Laws 1973, Ch. 138, § 1."

To be entitled to a first degree murder verdict, the State must prove beyond a reasonable doubt that the killing

**234**

was premeditated and deliberate. In order to show premeditation and deliberation, the State must prove that the defendant made a decision to kill prior to the act of killing, that "a plan to murder was formed after the matter had been made a subject of deliberation and reflection." *Macias v. State*, 36 Ariz. 140, 149, 283 P. 711, 715 (1929). While the necessary premeditation prior to the act of killing "may be as instantaneous as successive thoughts of the mind," *Macias v. State*, supra, at 150, 203 P. at 715, and may be proved by circumstantial evidence, *State v. Tostado*, 111 Ariz. 98, 523 P.2d 795 (1974); *State v. Sellers*, 106 Ariz. 315, 475 P.2d 722 (1970), premeditation and deliberation still must be shown.

The State's expert witness, a surgeon specializing in pathology who conducted the autopsy, testified that external examination revealed bruises all over the chest, back, legs, and thighs, as well as around the neck. The pressure applied around the neck was, however, not sufficient to rupture the larynx. The deceased also had a broken nose. The internal examination revealed nine fractured ribs, one of which punctured the lung. The pathologist also found lacerations of the liver, caused either by the fractured ribs or by a direct blow, and hemorrhaging of the brain, most probably caused by the victim falling on the back of her head against the floor. In his opinion, death was caused by these multiple injuries. No one single injury was singled out as the cause of death.

■ The defendant's tape recorded admission, the testimony of the pathologist, and the photographs of the deceased all suggest a random, violent and indiscriminate attack upon the victim, rather than the deliberate infliction of injuries calculated to result in death.

Viewing the facts in a light most favorable to sustain the court's judgment and the jury's verdict, *State v. Childs*, 113 Ariz. 318, 553 P.2d 1192 (1976), the record fails to support a finding of premeditation and deliberation.

■ That this crime was brutal there can be no doubt, but brutality alone cannot, in itself, support a finding of premeditation and deliberation. *People v. Anderson*, 70 Cal.2d 15, 73 Cal.Rptr. 550, 447 P.2d 942 (1968). The court erred in not granting the motion for directed verdict as to first degree murder.

■ There is no question that there was malice. Malice is implied when no considerable provocation appears or when the circumstances attending the killing show an "abandoned and malignant heart." There was substantial evidence of malice in this killing. A.R.S. § 13–451(B); *State v. Mendell*, 111 Ariz. 51, 523 P.2d 79 (1974); *State v. Coward*, 108 Ariz. 270, 496 P.2d 131 (1972); *State v. Schantz*, 98 Ariz. 200, 403 P.2d 521 (1965), cert. den. 382 U.S. 1015, 86 S.Ct. 628, 15 L.Ed.2d 530 (1966). Therefore, we have no trouble in sustaining a conviction for murder in the second degree, and the verdict must be reduced to that of second degree murder.

## DEFENDANT'S CONSULTATION WITH LAW PARTNER OF PROSECUTOR

■ The defendant asserts that he was denied a fair trial by the fact that the prosecuting attorney, Jay Flake, was a law partner to a Mr. Dennis Davis, who had given some legal advice to the defendant several weeks prior to the date of the homicide. The defendant argues that an attorney-client relationship was "clearly established" between himself and Mr. Davis which precluded Mr. Flake from prosecuting him.

Attorney Davis testified, after the defendant waived the attorney-client privilege, that the defendant had consulted him about a civil matter in Florida, and that he advised the defendant to proceed with counsel in that state. The consultation lasted approximately ten minutes and attorney Davis had no further contact with the defendant. There is no indication in the record that the defendant imparted any confidential communication to Mr. Davis which had any bearing on a homicide which had not yet been committed. We find no error

nor any impropriety on the part of Mr. Davis or Mr. Flake.

## DENIAL OF CONTINUANCE

■ The final assertion of error is that the trial court abused its discretion in not granting a continuance or a mistrial to the defendant when a witness failed to appear at the trial to testify.

On the first day of trial the witness, a Mr. Walter Walls, was sworn in and was placed under the witness exclusion rule. The second day of trial the court declared a recess and all witnesses were excused subject to further call. When the trial resumed, the witness Walls could not be located. The trial court issued a bench warrant for his arrest. Later defense counsel moved for a continuance to secure the witness' presence for his testimony. The court requested an offer of proof and co-counsel for the defendant related that the witness would have testified that he had been drinking with the defendant's wife at Bill's Bar and that she was intoxicated and argumentative. At the conclusion of the trial, the court denied the motion to continue as well as a motion for mistrial on the basis that the proposed testimony was cumulative.

The granting of a continuance is within the sound discretion of the trial judge whose decision will not be disturbed on appeal unless there is a clear abuse of discretion and unless denial of the motion is shown to be prejudicial to the defendant. *State v. Benge*, 110 Ariz. 473, 520 P.2d 843 (1974).

We agree with the trial court that the testimony was indeed cumulative as several witnesses had testified at trial as to the decedent's conduct at the bar in the hours before her death. The fact that the victim had been drinking and was intoxicated and argumentative at Bill's Bar was not contested. Moreover, this testimony was not crucial to the defense. There was no indication that this testimony would influence the outcome of the trial or would otherwise be helpful to the defendant. *State v. Ebert*, 110 Ariz. 408, 519 P.2d 1149 (1974);

*State v. Downing*, 109 Ariz. 456, 511 P.2d 638 (1973); *State v. Ahumada*, 25 Ariz.App. 247, 542 P.2d 828 (1976). We find no error.

## DEFENDANT'S BRIEF

■ After the briefs were filed by counsel in this matter, defendant requested leave to file a brief in propria persona which request was granted by this court. Defendant raised some 14 questions some of which are overlapping and some with no support in the record. Criminal appeals, like civil appeals, are decided on the record. *State v. Cutting*, 15 Ariz.App. 311, 488 P.2d 667 (1971). We will, however, consider two issues raised by the defendant:

a. The defendant contends that he talked to the victim Carol Lacquey on the telephone and that she is alive and well and living in Fon-Du-Lac, Wisconsin. Defendant contends that four other persons were present and heard the call. Defendant states:

"6. If necessary, the Appellant 'can produce', in The Arizona Supreme Court, 'The alive and living body of Carol Lacquey, the State's alleged deceased.' Which will prove that the trial of case No. 4801, was a complete farce and sham and Appellant further declairs (sic) that there cannot be any evidence, or bonified (sic) evidence in this case. There cannot be any corpus deliciti (sic) either, due to the fact that Carol Lacquey is alive and living in Wisconsen (sic) at the present time.

"7. Due to the above facts, it should be very clear to this court that the State has failed to prove that the alleged murder had been committed by Appellant. The alleged murder of Carol Lacquey is totally absured (sic) and ridiculous and an impossibility because she is still alive."

The record does not support the defendant's contention. It is obvious from the record that a person was, in fact, killed and that the victim was properly identified as the defendant's wife. We find no error.

■ b. Defendant further contends that there was such massive pretrial public-

ity that he could not have a fair trial. There was a hearing regarding the pretrial publicity and particularly regarding a radio broadcast the morning of the trial. After hearing evidence and questioning the jurors as to their knowledge, bias, and prejudice, it was determined that the press coverage was not prejudicial. Mere knowledge of a case is not sufficient to reverse a conviction. The test is whether a juror can lay aside knowledge and render a verdict based solely upon the evidence presented at trial. *Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975). See also *State v. Smith*, 116 Ariz. 387, 569 P.2d 817 (1977).

The judgment of guilt to second degree murder is affirmed. A.R.S. § 13–452. The matter is remanded for resentencing under A.R.S. § 13–453(B).

STRUCKMEYER, V. C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.