Robert Wayne **VICKERS**,
Petitioner-Appellant,

v.

James T. **RICKETTS**, et al.,
Respondents-Appellees.

No. 85–2396.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 16, 1986.

Decided Aug. 27, 1986.

Edward M. Chen, Charles R. Breyer, Coblenz, Cahen, McCabe & Breyer, San Francisco, Cal., for petitioner-appellant.

William Schaffer, III, Phoenix, Ariz., for respondents-appellees.

Before KENNEDY, REINHARDT and BRUNETTI, Circuit Judges.

KENNEDY, Circuit Judge:

Robert Wayne Vickers appeals from the district court's denial of his habeas corpus petition. Appellant challenges his conviction for first degree murder and sentence of death in the Arizona state courts. We find that the state trial court's failure to instruct the jury on second degree murder violated due process principles enunciated by the Supreme Court of the United States. We must reverse the district court.

Appellant and the victim Frank Ponciano were cellmates at the Arizona State Prison. On the evening of October 3, 1978, appellant and Ponciano were in their cell. The guard on a security check at 2:00 a.m. on October 4, 1978 noticed that appellant and Ponciano were awake. Three hours later, at about 5:00 a.m., appellant attracted a guard's attention and told him to "get this stinking son of a bitch out of my cell. . . . I think he died last night." To convince the guard that he was serious, appellant prodded Ponciano's body with a burning cigar. Ponciano did not react, and examination confirmed that he was dead. His face was discolored, his neck was bruised, and there were approximately a dozen puncture wounds on his upper body. There were also a number of cuts on his back, spelling the word "Bonzai," appellant's prison nickname. Officers searched the cell and found a strip of cloth torn from a sheet with a knot in it. A makeshift knife stained red was discovered in appellant's property box. An autopsy determined the cause of death was strangulation.

Appellant was indicted and tried for first degree murder. His defense was insanity. The defense was based on appellant's history of aggressive behavior and on expert psychiatric testimony attributing appellant's repeated acts of violence to an epileptic disorder that rendered him peculiarly susceptible to aggressive impulses. Defense counsel did not request a second degree murder instruction and no lesser included offense instructions were given. The trial judge instructed the jury that it could return any of three verdicts: (1) guilty of first degree murder; (2) not guilty; or (3) not guilty by reason of insanity. The jury returned a verdict of guilty of first degree murder. Pursuant to Arizona's capital sentencing scheme, a separate sentencing hearing was held before the trial judge. The judge sentenced appellant to death.

On direct appeal the Arizona Supreme Court upheld appellant's conviction and death sentence. *State v. Vickers*, 129 Ariz. 506, 633 P.2d 315 (1981). After the

state courts denied post-conviction relief, appellant brought the instant habeas corpus action in federal district court. The district court denied the petition without an evidentiary hearing, and this appeal follows. Appellant argues that his conviction for first degree murder was in violation of due process because the jury was not given the option of finding him guilty of the lesser included noncapital offense of second degree murder even though the evidence would have supported such a verdict. We agree. The contention has a solid base in controlling precedents, and we are required to reverse. We do not address appellant's other contentions on appeal, but we note that some raise substantial questions.

In *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), the Supreme Court held that in capital cases where the evidence would support conviction of a lesser included offense, the jury must be instructed to consider that alternative. The Court reasoned that where "the evidence would permit a jury rationally to find [the defendant] guilty of the lesser offense and acquit him of the greater," *id.* at 635, 100 S.Ct. at 2388 (quoting *Keeble v. United States*, 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973)), the failure to give the jury the "third option" of convicting on a lesser included offense enhances the risk of an unwarranted conviction, *Beck*, 447 U.S. at 637, 100 S.Ct. at 2389. The Court stated: "Such a risk cannot be tolerated in a case in which the defendant's life is at stake." *Id.* In *Hopper v. Evans*, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982), the Supreme Court reaffirmed its holding in *Beck*. The Court emphasized, however, that due process requires a lesser included offense instruction only if fairly supported by the evidence: "*Beck* held that due process requires that a lesser included offense instruction be given when the evidence warrants such an instruction. But due process requires that a lesser included offense instruction be given *only* when the evidence warrants such an instruction." *Id.* at 611, 102 S.Ct. at 2053 (emphasis in original).

The appeal turns, then, on whether the evidence at trial would have supported a second degree murder conviction. We conclude that such a verdict was a rational alternative based on all the evidence in the case.

Under the applicable Arizona statutes, "[a] person commits first degree murder if ... [k]nowing that his conduct will cause death, such person causes the death of another with premeditation...." Ariz.Rev.Stat.Ann. § 13–1105(A)(1) (1978). "A person commits second degree murder if without premeditation ... [s]uch person intentionally causes the death of another person...." Ariz.Rev.Stat.Ann. § 13–1104(A)(1) (1978). The critical distinction between first and second degree murder is the element of premeditation. *State v. Walton*, 133 Ariz. 282, 650 P.2d 1264, 1271 (Ariz.Ct.App.1982). The statutory definition of premeditation is "that the defendant acts with either the intention or the knowledge that he will kill another human being, when such intention or knowledge precedes the killing by a length of time to permit reflection." Ariz.Rev.Stat.Ann. § 13–1101(1) (1978). Under Arizona case law, premeditation exists when " 'the defendant made a decision to kill prior to the act of killing, [and] "a plan to murder was formed after the matter had been made a subject of deliberation and reflection." ' " *State v. Kreps*, 146 Ariz. 446, 706 P.2d 1213, 1216 (1985) (quoting *State v. Lacquey*, 117 Ariz. 231, 571 P.2d 1027, 1030 (1977) (quoting *Macias v. State*, 36 Ariz. 140, 283 P. 711, 715 (1929))). The essence of premeditation is the reflective intent to kill. *Walton*, 650 P.2d at 1271.

There was abundant, clear, persuasive evidence of premeditation in the case. The most probative evidence of premeditation was the testimony of Kent Spillman, a psychologist at the Arizona State Prison. The state called Spillman as a rebuttal witness, after appellant had testified that he did not remember attacking Ponciano. Spillman testified that he interviewed appellant on the afternoon of October 4, 1978, several hours after Ponciano was killed, at which

time appellant confessed to the crime. Spillman testified that appellant told him that he was angry at Ponciano because Ponciano drank his Kool-Aid and did not wake him for lunch. According to Spillman, appellant admitted killing Ponciano, described the crime in graphic detail, and also volunteered that the crime was, in his own words, "premeditated." Appellant told Spillman that he made a garrotte from a torn bed sheet and he had a knife. Early in the morning on October 4, 1978, he woke Ponciano and strangled him, and then stabbed him several times to make sure he was dead. Appellant did not remember carving "Bonzai" in Ponciano's back but said he did not have time to carve a swastika. Finally, appellant told Spillman that after killing Ponciano, he uttered "Bonzai" and said "You won't drink my Kool-Aid again."

Spillman's testimony and circumstances which served to confirm it were probative of premeditation, but the jury was free, nevertheless, to disbelieve it. And it is not simply a case of refusing to credit one state witness, for the defendant offered affirmative testimony to contradict Spillman and medical evidence that pointed to a sudden and impulsive act, as distinct from a premeditated one. At trial appellant admitted that he spoke to Spillman on October 4 but denied making the confession or using the word "premeditated." Appellant accused Spillman of lying. Credibility of the witnesses is for the jury to determine, and a jury could find appellant's testimony truthful, thus discrediting the confession.

The state is correct that appellant himself testified that on October 3 he was mad at Ponciano because Ponciano drank his Kool-Aid and did not wake him up for lunch. Appellant further testified that when Ponciano drank his Kool-Aid, appellant "felt like" hurting him. However, in light of the evidence that appellant suffered from a brain disorder that gave rise to episodes of impulsive aggression, that he was angry at Ponciano and may have wanted to hurt him shortly after lunch time on October 3 does not inevitably imply that his

anger led him to kill some fifteen hours later.

There was considerable evidence of appellant's abnormal and violent behavior. Appellant testified that he had scars from self-mutilation, and that he had stabbed and shot several people before his incarceration at the Arizona State Prison. There was testimony that prison authorities had repeatedly disciplined appellant for aggressive conduct. Appellant recently had been convicted of stabbing a fellow inmate, and he regularly carried and used weapons in the prison. Other inmates testified that appellant periodically engaged in bizarre episodes during which he screamed and made animal-like sounds, and punched and beat his head against the walls of his cell. The inmates testified that these episodes erupted spontaneously and for no apparent reason. During these disturbances, appellant was violent and appeared not in control of himself. There was testimony that appellant had a short temper and had spontaneously triggered several fistfights. Two inmates testified they would be reluctant to share a cell with appellant, suggesting they feared his violent outbursts. This testimony is consistent with a sudden act of violence, without premeditation.

Dr. Paul Bindleglas, a psychiatrist who conducted a pretrial mental status examination and testified for the defense, attributed appellant's aggressive behavior to a brain disorder related to an epileptic condition. Dr. Bindleglas testified that appellant's history of epilepsy was well documented, and that appellant had a history of epileptic seizures. Dr. Bindleglas stated that in his opinion an electroencephalogram showed that appellant suffered from a lesion of the left temporal lobe of the brain. He explained that such lesions are known to produce episodes of aggression and can give rise to seizures, and that the temporal lobe is closely related to aggression and hostility. Dr. Bindleglas noted that after medical authorities at the Arizona State Prison terminated appellant's epilepsy medication in 1977, appellant performed acts of self-mutilation and engaged in repeated episodes of impulsive aggression and violence

toward others. He opined that appellant's aggressive behavior after his medication was terminated was related to the lesion. Dr. Bindleglas concluded that appellant suffered from a seizure disorder of the left temporal lobe and may have been under the influence of a seizure when he killed Ponciano. According to Dr. Bindleglas, there was a strong possibility that appellant killed Ponciano after waking from his sleep in a state of post-epileptic confusion.

Dr. Bindleglas' testimony was replete with references to appellant's impulsive behavior. The Arizona Supreme Court has held that the tendency to act on impulse is probative of an absence of premeditation. *State v. Christensen,* 129 Ariz. 32, 628 P.2d 580, 582–83 (1981). Dr. Bindleglas testified on direct examination that the termination of appellant's epilepsy medication precipitated "characteristic impulsive episodes of violence...." He repeated: "These were impulsive episodes of violence." On cross-examination Dr. Bindleglas reiterated that appellant "became more aggressive and impulsive towards other people" after his medication was terminated. He added that appellant experiences "impulses to his emotion center [that cause] intense feelings of rage and aggression...." In addition, Dr. Bindleglas stated that appellant's "normal personality is one in which there is considerable hostility and aggressiveness," and opined that the killing occurred when appellant was "in a nonalert mind with considerable confusion and without any cerebral inhibitions on his aggressive impulses."

The evidence of impulsive aggression and Dr. Bindleglas' testimony attributing appellant's conduct to an epileptic disorder might not have been persuasive to a jury, but if it were, it would allow a rational conclusion that the killing was not premeditated. The jury might have rejected the conclusion that appellant was insane but nevertheless credited the testimony to the

extent it suggested appellant acted on impulse. A jury reasonably could find that appellant was under the influence of an epileptic episode when he killed Ponciano and that the disorder impaired his ability to reflect.

We recognize that evidence on lack of premeditation was not compelling. Dr. Bindleglas' testimony could be discredited in various ways, including evidence that appellant exhibited aggressive behavior before his epilepsy medication was terminated. The state's expert witnesses, Dr. Otto Bendheim and Dr. Maier Tuchler, testified that even if appellant suffered from epilepsy, an epileptic event could not have accounted for the crime. The garrotte made before the killing points to premeditation, but not necessarily so. A jury given the choice between first and second degree murder might well return a verdict of either first degree murder or second degree murder. Under the Supreme Court's decisions in *Beck* and *Hopper,* due process required that the jury be given that choice.

■ The state does not argue that appellant's failure to request a lesser included offense instruction at trial precludes his contention in this habeas corpus proceeding that such an instruction was required. On direct review the Arizona Supreme Court did not invoke a procedural bar [1] and rejected appellant's contention on the merits. We are free to consider the issue despite appellant's not having requested an instruction at trial. *Bell v. Watkins,* 692 F.2d 999, 1003–04 (5th Cir.1982) (reaching merits of *Beck* claim where state supreme court had considered the issue on direct review), *cert. denied,* 464 U.S. 843, 104 S.Ct. 142, 78 L.Ed.2d 134 (1983); *see Huffman v. Ricketts,* 750 F.2d 798, 800–01 (9th Cir.1984) (federal review not barred where higher state court has addressed the merits of a constitutional claim).

---

1. *Miller v. Stagner,* 757 F.2d 988, 993, *modified,* 768 F.2d 1090, 1091 (9th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1269, 89 L.Ed.2d 577 (1986), as we read the case, does not hold that failure to give the instruction sua sponte is a due process violation that survives a state procedural bar and necessarily becomes reversible error in a federal habeas proceeding. We do not consider that issue to have been presented in *Miller,* and we do not reach it here.

Appellant's conviction of first degree murder violates due process under the principles set forth in the *Beck* and *Hopper* decisions. We reverse the district court's denial of appellant's petition for a writ of habeas corpus. The district court shall enter an order granting a writ of habeas corpus unless the state commences further proceedings against appellant within a time the district court deems reasonable.

**REVERSED.**

REINHARDT, Circuit Judge, concurring.

I concur fully in the majority opinion, with the exception of footnote 1 which I consider dictum. I write separately to emphasize one point. As the opinion expressly notes, defense counsel failed to request a second degree murder instruction. Thus, the opinion necessarily holds that in a capital case where the evidence warrants a lesser included offense instruction but counsel fails to request that instruction, due process requires that the court give the instruction *sua sponte*. This holding does not represent any change in the law in our circuit. We have said essentially the same thing previously in *Miller v. Stagner*, 757 F.2d 988, 993, *modified,* 768 F.2d 1090, 1091 (9th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1269, 89 L.Ed.2d 577 (1986). Nevertheless, the principle is important and I believe it desirable to restate it explicitly. The question of whether a similar due process claim would survive any particular state procedural bar is not before us. Arizona raises no claim that any procedural bar exists here.