**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RICHARD HARLEY GREENWAY,
*Petitioner-Appellant*,

v.

CHARLES L. RYAN, Director of
Arizona Department of
Corrections,
*Respondent-Appellee.*

No. 14-15309

D.C. No.
4:98-cv-00025-RCC

OPINION

Appeal from the United States District Court
for the District of Arizona
Raner C. Collins, Chief District Judge, Presiding

Argued and Submitted October 28, 2015
Deferred January 25, 2016
Resubmitted March 27, 2017
San Francisco, California

Filed May 11, 2017

Before: Mary M. Schroeder, Johnnie B. Rawlinson,
and Carlos T. Bea, Circuit Judges.

Opinion by Judge Schroeder;
Concurrence by Judge Bea

# SUMMARY[*]

## Habeas Corpus/Death Penalty

The panel affirmed the district court's judgment on remand denying Arizona state prisoner Richard Greenway's habeas corpus petition challenging his conviction and death sentence.

The panel wrote that because the determination does not affect the scope of the issues before it in this appeal, it need not consider Greenway's argument that the district court erred in determining that some claims were outside the scope of this court's remand.

The panel held that neither of Greenway's certified claims of ineffective assistance of counsel has merit. As to his claim that trial counsel failed to present an overall defense theory, the panel held that ineffectiveness has not been shown. As to his claim that trial counsel should have explored the possibility of a mental incapacity defense of impulsivity in order to negate premeditation, the panel concluded that this *Christensen* defense would have been counterproductive.

The panel also deemed meritless Greenway's claim – as to which the panel asked for supplemental briefing – that trial counsel was ineffective during voir dire in failing to discover that a juror had been the victim of a violent crime that would have disqualified that juror.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel denied a certificate of appealability as to all other claims.

Concurring, Judge Bea would find that much of Greenway's ineffective-assistance claim based on trial counsel's failure to challenge and remove a juror was not fairly – or at all – presented in any state court proceeding and is therefore procedurally barred.

## COUNSEL

Robin C. Konrad (argued) and Therese M. Day, Assistant Federal Public Defenders; Jon M. Sands, Federal Public Defender; Office of the Federal Public Defender, Phoenix, Arizona; for Petitioner-Appellant.

Jeffrey Sparks (argued) and Laura P. Chiasson, Assistant Attorneys General; Jeffrey A. Zick and Lacey Stover Gard, Chief Counsel; Mark Brnovich, Attorney General; Office of the Attorney General, Tucson, Arizona; for Respondent-Appellee.

## OPINION

SCHROEDER, Circuit Judge:

   Richard Greenway is an Arizona state prisoner.  A jury
convicted him of the brutal 1988 murders of a mother and her
teenage daughter during a burglary in Tucson, Arizona.  He
was tried and convicted of burglary, armed robbery, theft by
control, arson of an unoccupied structure, as well as two
counts of murder in the first degree, and sentenced to death in
1989.  Following his appeal and state court post-conviction
proceedings, the district court denied his 28 U.S.C. § 2254
petition.

   We heard his first federal appeal in 2011.  *Greenway v.
Schriro*, 653 F.3d 790 (9th Cir. 2011).  Our decision affirmed
the district court's denial of Greenway's claims of ineffective
assistance at sentencing, but remanded for the district court to
consider on the merits the claims of ineffective assistance at
trial and on direct appeal.  *Id.* at 793.  The district court has
now done so and has denied them.  Greenway seeks review
in this appeal.

   The district court spent a good deal of time attempting to
determine what claims were within the scope of our remand,
because Greenway made additional contentions.  Although
the district court found that many of the claims were not
within the scope of the remand, it concluded that an
intervening Supreme Court decision required consideration of
some of the ineffectiveness claims in any event.  *See
Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012).  We do not
need to consider Greenway's argument that the district court
erred in determining that some claims were outside the scope

of our remand, however, since the determination does not affect the scope of the issues before us in this appeal.

The district court granted a certificate of appealability regarding two claims of ineffectiveness. Both relate to trial counsel's alleged failure to present defenses. Neither has merit.

Greenway claims trial counsel failed adequately to present an overall defense theory. Defense counsel at trial argued that the evidence showed only that Greenway was involved in destroying the stolen property after the murders had occurred. This theory was consistent with the physical evidence. No viable alternative theory appears in the record, and Greenway does not suggest one. Ineffectiveness has not been shown.

The district court also certified the issue of whether trial counsel should have explored the possibility of a mental incapacity defense of impulsivity, as recognized in Arizona, in order to negate premeditation. *See State v. Christensen*, 628 P.2d 580, 583–84 (Ariz. 1981). We conclude the suggested defense would have been counterproductive, as it would have placed Greenway as a principal in the murders, and would likely not have overcome the strong evidence of premeditation in any event.

This court additionally asked for supplemental briefing on Greenway's claim that trial counsel was ineffective during voir dire in failing to discover that a juror had been the victim of a violent crime that would have disqualified that juror. We conclude that this claim is also without merit. We deny a certificate of appealability as to all other claims.

## BACKGROUND

The facts relating to the nature of the crime and the procedural history are set forth fully in our prior opinion. *See Greenway*, 653 F.3d at 794. We summarize here briefly.

Police found the bodies of Lili Champagne and her daughter, Mindy Peters, in their home; each had been shot twice. Evidence suggested that the two had been killed in the course of a robbery. Following a news bulletin asking for information regarding the victims, Greenway's sister notified homicide detectives that Greenway knew something about the incident. Detectives picked up Greenway and his co-defendant, Chris Lincoln, for questioning. Lincoln confessed to participating in the killings and implicated Greenway. Greenway and Lincoln were then both arrested and charged with several counts, including murder.

Before trial, Greenway was placed in a cell with Anthony Schmanski. Schmanski, according to his trial testimony, asked Greenway why he was in jail, and Greenway answered, "Well, I just blew two people away" because "they had seen [my] face." Further investigation revealed Greenway had attempted to sell the victims' car stereo to Brian Mize, Greenway's co-worker. According to Mize's trial testimony, Greenway told Mize that he went to the victims' house and, after taking "some stuff," shot the victims. Greenway also told Mize that, after he shot the older lady, "her body rolled over and blood gushed out of her head." *See State v. Greenway*, 823 P.2d 22, 26 (Ariz. 1991).

There was also evidence that Greenway knew the victims. He had been to a party with Mindy in late 1987. Greenway

met Lili shortly thereafter when Greenway went to their house to return Mindy's wallet.

Prior to trial, Greenway's trial counsel had submitted proposed voir dire questions to the court, including: "Have any of you ever been the victim of a crime or testified in a criminal case?" and "Has anyone on the panel ever been the victim of a sex related crime?" During voir dire, the trial court did not ask these questions as proposed. Instead, the trial court asked: "Have any of you ever been a witness in a criminal case? Ever come to Court and testified in a criminal case?" The court also asked whether any juror had "ever been a witness to a criminal act where the police came out and they took your statement." Juror Virginia Coker remained silent, indicating negative responses to the questions. The next day, Coker approached the bench and disclosed to the judge that she had called the police regarding a domestic violence incident, but she did not disclose any other occasion when she had been a witness or given a statement to the police. Before the conclusion of voir dire, the court asked the attorneys whether there were any specific questions that they thought the court should ask. Greenway's counsel did not ask for his questions as originally proposed. Juror Coker was empaneled on Greenway's jury.

Greenway's trial lasted only three days, and the jury returned a guilty verdict on all counts the following day. In accordance with Arizona law at the time, the trial judge made the life or death sentencing decision after an aggravation-mitigation hearing. The judge sentenced Greenway to death.

In 1994, five years after trial, Coker signed an affidavit stating that, in addition to the domestic violence incident, she had been the victim of a violent crime—a home invasion and

sexual assault—seven years prior to serving on Greenway's jury.  She also said that she had testified against her attacker at his trial.

## DISCUSSION

Because Greenway filed his petition for a writ of habeas corpus after April 24, 1996, the Antiterrorism and Effective Death Penalty Act ("AEDPA") applies.  *Lindh v. Murphy*, 521 U.S. 320, 327 (1997).  Under AEDPA, we may disturb a state court's rulings only if they were "contrary to" or "involved an unreasonable application of" clearly established federal law as determined by the United States Supreme Court.  28 U.S.C. § 2254(d)(1).  In this case, the state court did not rule on the merits of the claims.  *See Greenway*, 653 F.3d at 800.  The district court therefore correctly considered the claims de novo.  On appeal, we review de novo the district court's denial of Greenway's habeas petition.  *See Lopez v. Schriro*, 491 F.3d 1029, 1036 (9th Cir. 2007).

To prevail on a claim of ineffective assistance of counsel, Greenway must show that counsel's performance was both inadequate and that the inadequate performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984).  The inquiry under *Strickland* is "highly deferential," and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.* at 689.

## A. Ineffectiveness During Voir Dire

Greenway did not raise an ineffective assistance claim relating to juror Coker in his state court post-conviction proceedings or in his original federal habeas petition. He did raise it before the district court on remand and we requested briefing on the merits in this appeal. Although the claim is unexhausted, we summarily discuss the merits.

The issue we must determine is whether counsel was ineffective during voir dire in not bringing forth the prior history of juror Coker. The answer must be in the negative. Counsel was not clairvoyant and had no reason to believe the prospective juror was withholding information. It is true that counsel requested the court to ask questions that, if the juror had decided to answer, might have put everyone on notice that the prospective juror had been a victim of a violent crime in her home. The judge did not ask the questions in precisely the requested form, however, and the juror answered the questions as posed by the judge. She revealed a domestic violence incident, but not her own sexual assault during a home invasion. Counsel had no reason to believe that there was anything more to disclose beyond the domestic violence incident she had described, nor are we persuaded that had Coker been asked the question as requested, she would have disclosed the sexual assault, and thereby been disqualified.

Greenway's claim is therefore far too speculative for a court to conclude that counsel was ineffective during voir dire. Accordingly, after reviewing the requested supplemental briefing from the parties, we find no basis for disturbing the district court's dismissal of the claim.

## B. Ineffectiveness with Respect to the Investigation and Defense Theory

The state trial was brief, with high stakes, and in both state court and this court, Greenway faults counsel for failing to conduct a deeper and broader investigation, to present additional witnesses, and to present a cohesive defense theory. Yet, there is not now, nor has there ever been any suggestion of what that further investigation could have yielded in terms of evidence that would have changed the result of the trial.

The only available witness Greenway now argues should have been called was Schmanski's landlady who, he contends, would have testified that Schmanski was an untrustworthy drunk. The jury, however, knew that Schmanski was an alcoholic. In closing argument, the prosecutor conceded, "Mr. Schmanski has a drinking problem [and] is an alcoholic." Defense counsel, in closing argument, emphasized that Schmanski was not only an alcoholic, but also was receiving psychological treatment and wanted to cut a deal. In short, Schmanski's landlady would have added little to what the jury already knew. Even if the jury had heard from Schmanski's landlady, that Schmanski was a drunk whose word could not be trusted, there is no reasonable probability of a different result at trial.

There was another potential witness, named Darrin Saige, who could not be located at the time of trial. Greenway now raises the possibility that Saige might have provided testimony to suggest that Greenway had only helped to destroy the evidence and was not at the scene of the murders. The problem is that we have no affidavit from Saige, or anyone else, to that effect.

The only indication in the record that Saige may have had any relevant information is in the form of notes from an investigator. The notes do not suggest that Saige could have provided material, admissible, exculpatory evidence. The notes indicate that Lincoln told Saige three different versions of the events in this case. In two versions, Lincoln implicated Greenway in the burglary and murders. In one version, Lincoln said that Greenway only helped to dispose of the property. According to Greenway, trial counsel should have called Saige to testify as to this third version of events, which Saige would have asserted was the truthful version. We are asked to assume that the jury would have credited the exculpatory version, rather than the other versions, which inculpated Greenway. There is no basis for such an assumption. Because Saige's testimony could have been more harmful than helpful, counsel was not ineffective in failing to locate Saige or present his testimony at trial.

In light of the prosecution's case, Greenway's counsel was not deficient in his presentation of the defense theory. The prosecutor presented evidence tying Greenway to the crimes: Greenway had tried to sell the stolen stereo equipment to his co-worker; Greenway's fingerprints were on the door of the stolen Porsche and the stock of the murder weapon; and police found the keys to the Porsche in Greenway's trailer. The prosecutor established that Greenway knew the victims and where they lived, and had been seen driving the victims' Porsche. The prosecutor also presented two witnesses, Schmanski and Mize, who testified that Greenway had admitted to committing the murders.

At trial, Greenway's counsel argued that the evidence did not put Greenway at the scene of the murders. During opening statements, defense counsel emphasized to the jury

that Greenway's fingerprint simply showed "that at some point in time Mr. Greenway may have handled that rifle." In closing argument, defense counsel emphasized that the evidence showed only that Greenway participated in disposing of the stolen property. Counsel further pointed out during closing that although Greenway's fingerprints were found on the stock of the gun, they were not found on the trigger. In addition, Greenway's fingerprints were not found at the murder scene. Defense counsel also attempted to discredit the testimony of the prosecution's witnesses by attacking their credibility. The theory of defense that counsel presented at trial was reasonable, given the evidence implicating Greenway in the crimes. Greenway's ineffective assistance of counsel claim with respect to the theory of defense therefore lacks merit.

## C. Ineffectiveness in Failing to Pursue a *Christensen* Defense

Greenway argues defense counsel should have mounted a defense that Greenway was incapable of premeditation. In Arizona, a defendant charged with first-degree murder may seek to negate premeditation by presenting evidence of his impulsive and reflexive, rather than reflective, nature, from which the jury may infer that the defendant acted in accordance with his nature at the time of the crime. *Christensen*, 628 P.2d at 583 ("The establishment of the character trait of acting without reflection tends to establish that appellant acted impulsively. From such a fact, the jury could have concluded that he did not premeditate the homicide."). We recognized the defense in *Vickers v. Ricketts*, 798 F.2d 369 (9th Cir. 1986), where we said, "The Arizona Supreme Court has held that the tendency to act on

impulse is probative of an absence of premeditation." *Id.* at 373.

In this case, however, a *Christensen* defense would have been counterproductive. Had counsel argued that Greenway acted impulsively, counsel would have placed Greenway at the scene of the crimes and negated the defense that he had not participated in the murders, a defense consistent with the physical evidence.

Moreover, evidence of an impulsive character trait is relevant only to rebut the showing of premeditation required for first-degree murder. A *Christensen* defense therefore would have had no effect on the charge of felony murder, which does not require premeditation, and is also punishable by death in Arizona. *See Tison v. Arizona*, 481 U.S. 137, 154 (1987); *State v. Woratzeck*, 657 P.2d 865, 868 (Ariz. 1982).

A *Christensen* defense had little likelihood of success in any event, since the evidence of premeditation was substantial. The evidence showed planning and reflection. The murder weapon required manual reloading of each bullet. The two victims were each shot twice. One was shot in the forehead through a pillow. There was no sign of a struggle at the crime scene. The shell casings were removed from the home. Greenway's co-worker testified that Greenway admitted he wore surgical gloves during the crimes. A *Christensen* defense would not likely have overcome such strong evidence of premeditation. For all these reasons, Greenway's claim that counsel was ineffective in failing to pursue a *Christensen* defense lacks merit.

## CONCLUSION

The district court did not err in denying Greenway's claims of ineffective assistance of counsel.

The judgment of the district court is **AFFIRMED**.

---

BEA, Circuit Judge, concurring:

I concur in full in Judge Schroeder's opinion. Nevertheless, I write separately because I would find that much of Greenway's ineffective assistance of counsel claim based on trial counsel's failure to challenge and remove a biased juror was not fairly—or at all—presented in any state court proceeding, and is therefore procedurally barred by Greenway's failure to exhaust his state court remedies. Furthermore, that waiver is not excused under the very narrow exception recognized in *Martinez v. Ryan*, 132 S. Ct. 1309, 1320 (2012) (holding that a defendant's failure to raise a claim of ineffectiveness as to *trial* counsel in state court post-conviction proceedings may be excused where the defendant's counsel in the "initial-review collateral proceedings" was *himself* ineffective). Our review, as a federal habeas court, is therefore limited to those arguments that were properly presented to the Arizona Superior Court.

As detailed in the Court's opinion, Greenway was sentenced to death after a jury found him guilty of murder, burglary, armed robbery, theft by control, and arson. *See State v. Greenway*, 823 P.2d 22, 26 (Ariz. 1991). On direct appeal, Greenway challenged the judge's imposition of the death penalty and alleged a number of counts of ineffective

assistance of counsel ("IAC") during the *sentencing* proceedings. These claims were all rejected on their merits. *Id.* at 40.

Greenway later discovered that one of the members of his jury, Virginia Coker ("Juror Coker"), had been the victim of a home break-in and sexual assault by knife point in the early 1980s. *See State v. Hauss*, 142 Ariz. 159, 160, 160–61, 166 (Ct. App. 1984). In fact, Juror Coker had testified against her assailant at his trial. Juror Coker failed to disclose this information during voir dire in Greenway's case, despite clear questions from the trial court judge as to whether any venire member had ever "been a witness" or "come to Court and testified in a criminal case?" In 1994, approximately five years after Greenway's trial, Juror Coker signed an affidavit admitting that she had failed to disclose her status as the victim of a violent crime during voir dire (the "Affidavit").[1]

In August 1992, Greenway commenced collateral proceedings for post-conviction relief in Arizona Superior Court. These proceedings continued into 1996,[2] yet at no

---

[1] Though the record is not entirely clear, it appears that it was Greenway's counsel who discovered this information and obtained the Affidavit from Coker in December 1994, meaning that Greenway had access to, and was aware of, the Affidavit as of December 1994. *See infra*, n.2.

[2] We previously summarized the timeline of Greenway's post-conviction proceedings as follows:

> Greenway filed his *pro se* preliminary petition for post-conviction relief under Rule 32 of the Arizona Rules of Criminal Procedure ("Rule 32 petition") in state court in August 1992. Judge Scholl appointed counsel and ordered counsel to file an amended petition by February

point did Greenway raise a claim of IAC based on Coker's falsities in his petition for post-conviction relief. Sometime after filing his initial petition, Greenway acquired new counsel, Carla Ryan ("Ryan"). In August 1996, Ryan filed an Addendum to Greenway's petition for post-conviction relief (the "Addendum") to state the factual bases for Greenway's new claims of IAC at trial and on direct appeal. The Addendum lists, largely in bullet-point form, the dozens of ways in which trial and direct appeal counsel were allegedly ineffective. Both before and at the time she filed the Addendum, Ryan had access to Coker's 1994 Affidavit, yet Ryan failed to raise any IAC claim related to Juror Coker or juror bias in the Addendum.[3]

---

> 1, 1993. Counsel then filed a short, untimely petition raising only one issue of ineffective assistance of counsel at sentencing, and Greenway asked for a change of counsel that his attorney did not oppose. No further pleadings or proof were entered by counsel pending the change of counsel ruling. The trial judge, however, in January 1994, summarily denied the post-conviction petition in a minute order, without ruling on the request for change of counsel. The trial court subsequently granted Greenway's motion to proceed *in propria persona* and allowed him to file a motion for reconsideration. . . . [¶]
>
> The case was reassigned to a different judge in January 1996. Greenway then filed the motion with the trial court seeking reconsideration of its denial of his post-conviction petition. . . . [and] leave to amend . . . ."

*Greenway v. Schriro*, 653 F.3d 790, 795–96 (9th Cir. 2011).

[3] Though the precise timeline is not entirely clear from the record, Greenway admitted in the district court proceedings on remand from our 2011 disposition that he was aware of the Affidavit well before Ryan filed

The Arizona Superior Court summarily dismissed all the claims in Greenway's Addendum as procedurally barred under Arizona Rules of Criminal Procedure, Rule 32.2(a)(3).[4] Greenway petitioned for federal habeas relief, and the district court held that the state court's dismissal of Greenway's petition for post-conviction relief pursuant to Rule 32.2(a)(3) constituted an independent and adequate state ground sufficient to support a finding of procedural default. We reversed. We reasoned, first, that Rule 32.2(a)(3) applied only when there had been a "*prior* post-conviction proceeding." *Greenway v. Schriro*, 653 F.3d 790, 800 (9th Cir. 2011) (emphasis added). In Greenway's case, there had been "no such prior post-conviction proceeding" because Greenway had been "trying to amend his *first* petition" for post-conviction relief when the state court judge summarily dismissed his claims. *Id.* Because Rule 32.2(a)(3) did not even apply, it was not an "independent and adequate" state court ground barring our review. *Id.* Second, we reasoned that, under Arizona Rules of Criminal Procedure, Rule 32.6(d), a defendant may amend a post-conviction petition for relief for "good cause." Yet, notwithstanding this provision,

the Addendum. *See* Brief of Petitioner at 19 & n.24, *Greenway v. Ryan*, 2013 WL 6196293 (D. Ariz. Nov. 27, 2013) (No. CV-98-25-TUC-RCC), ECF No. 169 ("Juror Coker had been the victim of rape and sexual assault. . . . This information was discovered during Greenway's post-conviction proceedings when he was represented by the Arizona Capital Representation Project. Greenway's successor counsel, Carla Ryan, who ultimately filed a request to amend his post-conviction petition . . . never included this information or a separate juror misconduct claim in the record.").

[4] Rule 32.2(a)(3) provides, "A defendant shall be precluded from [post-conviction] relief under this rule based upon any ground . . . . [t]hat has been waived at trial, on appeal, or in any previous collateral proceeding." Ariz. R. Crim. P. 32.2(a)(3)).

the state court judge had failed to consider whether good cause existed in Greenway's case.[5]  *Id.* at 799.  Thus, Rule 32.6(d) also did not bar our review of Greenway's petition. *Id.* (citing to our prior decision in *Scott v. Schriro*, 567 F.3d 573 (9th Cir. 2009), where we held that "Rule 32.6(d) was not an adequate bar to federal review because the rule was not clear, well-established, nor consistently applied in Arizona"). Having concluded that the claims in Greenway's Addendum were not barred, we remanded this case to the district court with instructions to review *de novo* the merits of *those* claims. Thus, our prior mandate limited the district court's review (and, correspondingly, our own review on appeal) to those claims stated in the Addendum.

Our review is likewise limited by the exhaustion-of-state-remedies doctrine, *See, e.g.*, *Weaver v. Thompson*, 197 F.3d 359, 364 (9th Cir. 1999) (A petitioner is barred from raising for the first time in federal habeas proceedings arguments that do not arise out of the "same [factual] incident" as the claims presented to the state court or which "fundamentally alter the legal claim already considered by the state courts." (internal quotation marks omitted)).  In *Dickens v. Ryan*, 740 F.3d 1302 (9th Cir. 2014) (en banc), for example, we held that even a related, but *more specific* claim might be barred in federal collateral proceedings if it significantly strengthened the evidentiary posture of the petitioner's state-court claim and thus fundamentally altered it.  *Id.* at 1318.  In *Dickens*, the petitioner had made only general allegations in the state court proceedings that "sentencing counsel did not effectively evaluate whether Dickens 'suffer[ed] from any medical or

---

[5] Rule 32.6(d) provides, "After the filing of a post-conviction relief petition, no amendments shall be permitted except by leave of court upon a showing of good cause."  Ariz. R. Crim. P. 32.6(d).

mental impairment.'" *Id.* at 1319. Then, for the first time on federal habeas review, Dickens offered evidence of "specific conditions" (Fetal Alcohol Syndrome and organic brain damage) in support of his IAC claim. *Id.* We concluded that Dicken's "newly enhanced *Strickland* claim [was] procedurally barred" because the new factual predicate "substantially improved" the evidentiary posture of Dickens' IAC claim. *Id.*

So here, Greenway's current claim that trial counsel was ineffective in failing to take certain steps to prevent a biased juror (Juror Coker) from being empaneled was never "fairly presented" to the state court. *Picard v. Connor*, 404 U.S. 270, 275 (1971) ("We emphasize that the federal claim must be fairly presented to the state courts."). Greenway's state-court Addendum contains no mention of Juror Coker, of juror bias, or of counsel's failure to ask specific questions during voir dire. In fact, the only statement in the Addendum related to Greenway's current juror bias claim is that trial counsel's failure to use a juror questionnaire was "questionable." But the Addendum states no basis as to *why* that failure was "questionable," much less that such failure rose to the level of ineffective assistance of counsel. Additionally, Greenway offers no excuse for his failure to present a juror bias claim in state court. Indeed, Greenway admits that he was aware of Juror Coker's December 1994 Affidavit nearly two years before Ryan filed the August 1996 Addendum. Still, he did not argue that the missing questionnaire rendered counsel's performance ineffective *because* it could have asked whether any venire member had been the victim of a violent or sex-related crime. Under *Dickens*, I would find that Greenway's cursory criticism in his Addendum of the *method* of voir dire does not preserve Greenway's factually distinct and far more

specific claim that a biased juror was seated because trial counsel failed to ask the right *substantive questions*.

Nor may we overlook this default under *Martinez*, which permits a federal habeas court to excuse a defendant's failure to exhaust state court remedies in initial post-conviction review proceedings if counsel in those collateral proceedings was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984). *Martinez v. Ryan*, 132 S. Ct. 1309, 1318 (2012). Here, *Martinez* would apply only if Greenway can demonstrate that Ryan, his initial post-conviction review counsel, acted ineffectively in failing to raise an IAC claim as to trial counsel on the juror bias issue. Greenway did not even attempt to make this showing in his 99-page opening brief, which contained only the most cursory reference to *Martinez*. Indeed, Greenway specifically argued the *opposite*: that "Ryan fairly presented Greenway's IAC claim and gave the state court an opportunity to decide the federal claim." *See United States v. Kama*, 394 F.3d 1236, 1238 (9th Cir. 2005) ("[A]n issue is waived when the appellant does not specifically and distinctly argue the issue in his or her opening brief.").

But even assuming Greenway has not waived his *Martinez* argument by failing to make it, I would find that *Martinez'* "narrow exception" does not apply here. To prevail on a claim of IAC, Greenway would have to show that Ryan's performance (1) fell below objective standards of reasonableness "outside the wide range of professionally competent assistance," and (2) prejudiced him by creating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding could have been different." *Strickland v. Washington*, 466 U.S. 668, 690, 694 (1984). Importantly, Greenway is not alleging a *direct*

violation of his due process or Sixth Amendment right to an impartial jury.  Rather, he is alleging that trial counsel's failure to take certain steps that, *arguendo*, would have revealed Juror Coker's bias (thereby preventing a constitutional violation) rendered trial counsel's representation ineffective.  For the reasons described in Judge Schroeder's opinion, however, this claim is predicated on multiple layers of speculation.  A reasonable attorney in Ryan's position could therefore have concluded that it lacked merit; thus Ryan was not ineffective in failing to raise it. Thus, *Martinez* does not apply to excuse Greenway's failure to exhaust his state-court remedies.

In sum, I would find that Greenway has waived any claim of juror bias based on trial counsel's failure to ask certain questions that allegedly would have prevented Juror Coker from being seated on Greenway's jury.